| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY,<br><br>    Plaintiff,<br><br> vs.<br><br>U.S. DEPARTMENT OF THE INTERIOR, DEB HAALAND, in her capacity as Secretary of the Department of the Interior, BUREAU OF LAND MANAGEMENT, and TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management;<br><br>    Defendants. | Case No.: 3:24-cv-00051-SLG |

# PLAINTIFF AIDEA'S OPENING BRIEF ON COUNT II(B) AND OPPOSITION TO DOI'S MOTION FOR SUMMARY JUDGMENT ON COUNT II(B)

Attorneys for Plaintiff

David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, AK 99501
907-276-1550 (phone)
907-276-3680 (fax)
dgross@bhb.com
zeisberg@bhb.com

James H. Lister, ABA # 1611111
Brian V. Gerd, ABA # 1810097
Birch Horton Bittner & Cherot
Suite 350, 1150 Connecticut Ave.
Washington, DC. 20036
202-659-5800 (phone)
202-659-1027(fax)
jlister@bhb.com
bgerd@bhb.com

The scheduling order in this judicial review case designates for separate briefing of AIDEA's Count II(b) pretextual decision-making claim. ECF 49, 64. Accordingly, Plaintiff AIDEA now briefs its pretext claim.[1]

The evidence to which AIDEA presently has access—both through the public record and its Freedom of Information Act ("FOIA") requests to DOI and other agencies—demonstrates that the rationale DOI has presented to this Court is likely not what truly motivated DOI to cancel AIDEA's leases.[2] Its motivation was instead precisely what it told the public: that it desired to keep anyone from developing any portion of the Coastal Plain. Its claim of legal error in the leases' inception was simply a pretext.

In moving for summary judgment on the pretext claim, DOI describes the summary judgment standard as being whether either party has shown evidence establishing a genuine issue of material fact.[3] AIDEA concurs with that framing for this fact-based APA claim. At this time, however, the factual record relevant to AIDEA's pretext claim is not yet fully

---

[1] Because Federal Defendants ("DOI") elected to move ahead of schedule for summary judgment on the pretext claim in their earlier response brief addressing other claims (ECF 52), this brief also serves as AIDEA's opposition to DOI's motion for summary judgment on that claim. The remaining briefs scheduled (ECF 64) to address the pretext claim are the DOI and intervenor response briefs due August 30 and AIDEA's reply memorandum due September 13, 2024. DOI's deviation from the parties' anticipated briefing schedule has necessitated AIDEA to exceed its allotted page limit for this brief by approximately two pages in order to respond to DOI's arguments regarding pretext.

[2] AIDEA is concurrently filing a motion to supplement the administrative record and admit extra-record evidence that may be properly considered under APA principles. *See* Joint Motion for Scheduling Order, ECF 48 at 2-3 (AIDEA may later move to supplement the AR with recently obtained materials, and parties may file responses).

[3] See Fed. R. Civ. P. 56(a); DOI June, 2024 Brief at 13 (ECF 52) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986)).

developed. For that reason, the Court should decline DOI's invitation to prematurely issue summary judgment, and instead hold AIDEA's pretext claim in abeyance, allowing this matter to proceed to discovery and trial in the event the Court does not enter summary judgment in AIDEA's favor on its other fully-briefed substantive claims.

## I. LEGAL FRAMEWORK

The leading case on pretext claims is *Dept. of Comm. v New York,* 588 U.S. 752 (2019). As the Court explained in that decision, courts normally begin judicial review actions by looking to the rationale stated by the agency for its decision. *Id.* at 780 ("We start with settled propositions. . . in order to permit meaningful judicial review, an agency must 'disclose the basis' of its action.") (citations omitted). Further, courts presume the agency's stated rationale for taking an action accurately describes the real reasons the agency took the action. *Id.* at 780-81. This presumption applies even if the agency may have had other unstated motives that align with the stated rationale, but do not conflict with the stated rationale.[4] However, if the evidence shows the stated rationale is not the "genuine" reason the agency took action, then the court is prevented from conducting its required review of the agency's reasoning.[5] It must reverse the agency action and remand

---

[4] *Dept. of Comm*, 588 U.S. at 781.

[5] *Id*. at 785; *see United Food and Commercial Workers Union, Local No. 653 v. U.S. Food & Drug Admin.,* 532 F.Supp.3d 741, 769-70 (D. Minn. 2021) ("While changing a longstanding position is permissible if the agency explains that change, it is generally impermissible when an agency changes course or offers internally inconsistent rationales during a single action."); *Natl. Fuel Gas Supply Corp. v. F.E.R.C.,* 468 F.3d 831, 839 (D.C. Cir. 2006) ("… where FERC has relied on multiple rationales . . . and we conclude that at least one of the rationales is deficient, we will ordinarily vacate the order unless we are certain that FERC would have adopted it even absent the flawed rationale.").

AIDEA V. HAALAND, ET AL.     CASE NO. 3:24-CV-00051-SLG
PLAINTIFF AIDEA'S OPENING BRIEF ON COUNT II(B)     PAGE 2 OF 13
Case 3:24-cv-00051-SLG     Document 66     Filed 08/09/24     Page 3 of 14

to the agency for a further explanation.[6] Courts' review of agency decisions is somewhat deferential, but is "not required to exhibit a naivete from which ordinary citizens are free."[7]

Pretext claims present a unique procedural problem. Agencies will rarely reveal hidden motivations in the administrative record and will vehemently argue against allowing discovery.[8] Plaintiffs must cobble their cases together by attempts to supplement the administrative record, or may move for the admission of extra-record evidence.[9] Material that is not admissible through one of those standard routes may also be considered by the court if the plaintiff makes a showing of improper agency behavior (*id.*); where an agency fails to explain its actions, frustrating judicial review; or where the agency appears to have relied on materials not included in the record.[10] Discovery and a trial on the merits is also available in some of these circumstances, and reversal and remand in others.[11]

---

[6] *Dept. of Comm.* 588 U.S. at 785 ("the evidence tells a story that does not match the explanation the Secretary gave for his decision. … The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose" of this inquiry); *see also Sweet v. DeVos,* 495 F.Supp.3d 835, 846 (N.D. Cal. 2020) ("In an ordinary case, pretext leads to remand so the agency may explain itself . . . Extraordinary circumstances, however, such as a pressing deadline, compel discovery.").

[7] *Dept. of Comm,* 588 U.S. at 785 (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977)).

[8] *See, e.g., Dept. of Comm,* 588 U.S. at 782.

[9] *See id*.

[10] *See Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436–37 (9th Cir.1988).

[11] *Dept. of Comm.,* 588 U.S. at 765-66 (describing trial of some issues and discovery); *see also*, discussion in n. 6 above.

## II. EVIDENCE REGARDING PRETEXT

The "official" agency rationale for canceling AIDEA's leases is stated in DOI's September 6, 2023 decision letter to AIDEA (the "Lease Cancellation Decision," AR 5353). DOI references its discovery of purported legal errors, which it uses to justify its cancellation of all purportedly erroneous leases, and is currently reconsidering the terms of the leasing program. *Id.*

But there is another reason, contemporaneously announced and established by evidence that the parties have stipulated is admissible. On September 6, 2023, DOI Secretary Haaland stated to the press in announcing the cancellation that "[w]ith today's action no one will have rights to drill oil in one of the most sensitive landscapes on Earth."[12] Her language was unequivocal and was calculated to lead the audience to believe that DOI had acted to prevent drilling for oil in pristine ANWR for a long time (perhaps forever). Protecting ANWR from oil and gas development forever, or for some long period, is inconsistent with the Tax Act, which requires immediate action to facilitate the development of the oil and gas resources of ANWR, including the issuance of leases. DOI was required to complete a lease sale by December 2021 and another this year. Tax Act, Pub. L. 115-97 § 20001(c). DOI proffers an alternative explanation of these remarks after the fact.[13] It claims that contrary to language of the Secretary's statement, she meant to say that as of the moment she spoke, no one could drill in ANWR. *Id.* at 27, n. 9. But this

---

[12] Her remarks are quoted in DOI's Answer to Amended Complaint. ECF 20 at ¶61. It is this quotation that the parties stipulated is admissible in this case, obviating the need for AIDEA to move for its formal inconclusion in the AR. *See* ECF 48 at 2, n.1.

[13] DOI June 7, 2024 Brief at 12-13, 24-27 (ECF 52).

AIDEA V. HAALAND, ET AL.     CASE NO. 3:24-CV-00051-SLG
PLAINTIFF AIDEA'S OPENING BRIEF ON COUNT II(B)     PAGE 4 OF 13
Case 3:24-cv-00051-SLG    Document 66    Filed 08/09/24    Page 5 of 14

strained interpretation overlooks that the Secretary did not mention any resumption of the development program, or any errors that justified its postponement. Her remarks were not temporally limited in any way, and focused on facilitating environmental conservation rather than Congress's intent in enacting the Tax Act. She communicated a long-lasting vision: "no one <u>will</u> have rights to drill" in ANWR. DOI's stated interpretation is also inconsistent with President Biden's September 6, 2023 statement regarding the cancellation of AIDEA's leases. In that statement, President Biden celebrated the lease cancellation and promised that his "administration will continue to take bold action to meet the urgency of the climate crisis and to protect our lands and waters for generations to come."[14]

It is this second agency rationale—that development in ANWR should never occur— that AIDEA submits was the true basis for DOI's decision to cancel the leases. In other words, the Court should determine that Secretary Haaland meant what she said, and accept those words as DOI's true rationale. This rationale is revealed by other evidence, too: some well-known, some obtained recently through FOIA.

First, as the Court may recall, then-Candidate Joe Biden stated in 2020 that he "completely opposed" drilling in ANWR.[15] Second, another senior decision-maker at DOI

---

[14] Ex. 4 to Pl.'s Mot. to Supplement the Admin. Rec. Also available at: https://www.whitehouse.gov/briefing-room/statements-releases/2023/09/06/statement-from-president-joe-biden-on-protecting-arctic-lands-and-wildlife-in-alaska/

[15] *See* User Clip, Joe Biden on the Arctic Refuge, https://www.c-span.org/video/?c4856989/user-clip-joe-biden-arctic-refuge. The parties have stipulated, by correspondence, to the admissibility of this video clip. A candidate's remarks several years earlier do not by themselves establish the rationale for an agency decision made later

AIDEA V. HAALAND, ET AL.     CASE NO. 3:24-CV-00051-SLG
PLAINTIFF AIDEA'S OPENING BRIEF ON COUNT II(B)     PAGE 5 OF 13
Case 3:24-cv-00051-SLG    Document 66    Filed 08/09/24    Page 6 of 14

involved in canceling AIDEA's leases also stated her strident views that drilling in ANWR should never occur. In December 2020, Tracy Stone-Manning, then employed as a non-lawyer program manager by the National Wildlife Federation ("NWF"), submitted a declaration to this Court in support of NWF's request for an injunction enjoining DOI from conducting the auction which predicated AIDEA's leases. Stone-Manning's reasons for opposing the program closely echo Secretary Haaland's statement after canceling AIDEA's leases:

> The Arctic Refuge was set aside for the purposes of protecting wilderness, recreational values, and wildlife habitat. Bureau of Land Management's (BLM) plan to allow oil and gas leasing, seismic exploration, and other oil and gas activities in the Refuge undermines and is inconsistent with these important and unique values.[16]

In her remarks to the press with this filing, Stone-Manning was even more emphatic:

> The headlong rush to destroy one of the last truly wild places in the world threatens Indigenous communities, iconic wildlife, and would further accelerate climate change impacts.[17]

Stone-Manning thus committed by December 2020 to the view that oil and gas development of the ANWR Coastal Plain should never occur, as opposed to the view that the program should be paused and modified so that oil and gas development could begin.

---

while he is President. But they do show that AIDEA's interpretation of the Secretary's remarks is entirely consistent with her supervisor's longstanding and deeply held views.

[16] Stone-Manning Declaration in Support of Motion for Preliminary Injunction, ¶ 13 (ECF 47-15, Case No. 20-cv-204-SLG, December 15, 2020). A copy is supplied as Ex. 5 to Pl.'s Mot. to Supplement the Admin. Rec.

[17] The December 15, 2020 press release with remarks from Stone-Manning is supplied as Ex. 6 to PL's Mot. To Supplement the Admin. Rec. *See* https://www.wilderness.org/articles/press-release/indigenous-allied-groups-go-court-stop-issuance-arctic-refuge-leases

After this Court denied the requested preliminary injunction to enjoin DOI from issuing leases to AIDEA, Stone-Manning left NWF to join the Biden Administration, becoming the BLM Director. At DOI, she swiftly resumed work on the ANWR oil and gas leasing program, despite her recent litigation efforts against the program for NWF.

Emails obtained through FOIA show that after joining BLM, Stone-Manning was heavily involved in decision-making regarding both the ANWR oil and gas program in general and AIDEA's leases in particular.[18] BLM staff emailed each other on Tuesday, September 5, 2023, the day DOI before canceled AIDEA's leases, to report that Stone-Manning had contacted them the day before that, September 4 (Labor Day).[19] Stone-Manning directed them to expedite their work so that BLM could release the Draft SEIS for the leasing program that week. *Id.* Staff remarked that it was unusual to receive such a request on a holiday, but that the "team is now in over drive." *Id.* DOI issued the Draft SEIS (AR 3924) two days later, on September 6, 2023, along with the Lease Cancellation Decision, which relied on the Draft SEIS (AR 5356, n. 4).[20]

That same day and the day after, questions were already rolling in. BLM staff routed them to Stone-Manning. On September 6, 2023, an employee at the Office of Management and Budget ("OMB") expressed concern over whether the decision to cancel AIDEA's leases had been properly vetted; whether the decision complied with the Tax Act; whether

---

[18] *See* Pl.'s Mot. to Supplement Admin Rec., Exhibits 1-3 (filed concurrently).

[19] September 5, 2023 email from Bobbi Jo Skibo to multiple FWS staff involved in preparing the Draft SEIS (within Ex. 3 to Pl.'s Mot. to Supplement the Admin. Rec.).

[20] https://eplanning.blm.gov/eplanning-ui/project/2015144/570 (Draft SEIS "Release Date" was September 6, 2023). Federal Register publication followed (AR 5363).

AIDEA V. HAALAND, ET AL.                                                        CASE NO. 3:24-CV-00051-SLG
PLAINTIFF AIDEA'S OPENING BRIEF ON COUNT II(B)                PAGE 7 OF 13
Case 3:24-cv-00051-SLG     Document 66     Filed 08/09/24     Page 8 of 14

DOI had consulted its attorneys before issuing it; and whether the President had been consulted.[21] This question was run up BLM's chain of command by email to Stone-Manning: BLM was holding off responding to OMB while its senior management evaluated how to respond.[22] Staff specified that this management meeting needed to include "Tracy", i.e. Stone-Manning. Another email in the chain is from a DOI solicitor and provides redacted legal advice to Stone-Manning and others on how to respond to OMB's concerns.[23] Stone-Manning was involved at every stage of the lease cancellation.

On September 6 and 11, 2023, Congressional Staff requested from DOI's Office of the Secretary a copy of any decision document issued by DOI that explained the lease cancellation in greater depth than DOI's news release did.[24] This inquiry was likewise forwarded to Stone-Manning—because none of the BLM and DOI employees along the way could find that decision document. On September 13, 2023, the inquiry reached Nada Wolf Culver, the Principal Deputy Director of BLM. Despite her senior position within BLM, she too did not have a decision document. Culver wrote to Stone-Manning and DOI Deputy Assistant Secretary Laura Daniel-Davis asking for guidance on how to respond to this request, explaining "***I understand that the rationale*** [for canceling

---

[21] Ex. 1 to Pl.'s Mot. to Supplement the Admin. Rec., Email chain with "OMB questions on Press Release for Arctic Lands and Wildlife in Alaska" in the subject line.

[22] *Id.* (Culver's email to Stone-Manning and others on September 7, 2023).

[23] *Id.* (Annaotyn Travis, Esq, email to Stone-Manning and others, September 7, 2023) (most content redacted).

[24] Email chains with "guidance please" subject line starting September 6, 2023, and running through September 13, 2023. This "Guidance Please Chain" is supplied as Ex. 2 to Pl.'s Mot. to Supplement the Admin. Rec.

AIDEA's leases] is provided in a letter that went to AIDEA but *wasn't made public*. I haven't seen that and wasn't sure if you wanted to provide that or something else in response to this request. I've heard this question elsewhere already (OMB asked, too) so we probably do need an answer and I am presuming you all thought about that already but again not sure."[25]

Stone-Manning and Davis-Daniels did have the decision, and they emailed between themselves on September 13, 2023 as to what to do. They worried that this request for a copy of the decision document was a harbinger of more to come. Stone-Manning said that she sent the Lease Cancellation Decision to Culver, but anticipated more requests for it, and that they needed to huddle: "Let's discuss this and invariably other requests to come." Davis-Daniels responded: "Let's discuss. We've not provided [the Lease Cancellation Decision] to anyone and Drew needs to handle."[26] By then, a week had elapsed since the cancellation was publicly announced. Why were senior agency officials so reluctant to make public and disseminate the agency's "official" rationale for the cancellation?

By then, DOI had repeatedly presented a different and much simpler rationale for lease cancellation: the leases were canceled to preclude any drilling in ANWR, period. This started with Secretary Haaland's remarks to the press discussed above, which implied that DOI would never allow oil and gas development in pristine ANWR. It continued with President Biden's press statement that same day, also discussed above.

---

[25] *Id.* (September 13, 2023 email from Culver to Stone-Manning and Daniel-Davis) (emphasis added).

[26] *Id.* (September 13, 2023 email exchange between Stone-Manning and Daniel-Davis.) AIDEA does not know who "Drew" is.

AIDEA V. HAALAND, ET AL.                                          CASE NO. 3:24-CV-00051-SLG
PLAINTIFF AIDEA'S OPENING BRIEF ON COUNT II(B)               PAGE 9 OF 13
Case 3:24-cv-00051-SLG     Document 66     Filed 08/09/24     Page 10 of 14

It does not help DOI's defense that Stone-Manning and Daniel-Davis joined DOI from their prior employment at project opponent NWF.[27] This is most concerning regarding Stone-Manning, because of her active involvement at NWF in litigation against the issuance of AIDEA's leases. However, their career trajectories are still pertinent to the issue of pretext. Their horse-switching bolsters the inference that the true motive of these senior BLM and DOI managers with involvement in decision-making was to block the program, rather than to fix legal errors and resume the program.[28]

## III. DISCUSSION

DOI's FOIA production to AIDEA is not yet complete, and is being supplemented by the DOI FOIA office each month.[29] For example, AIDEA does not yet have emails, other than meeting notices, involving DOI Deputy Secretary Tommy Beaudreau, who signed the Lease Cancellation Decision. These delays have materially impacted AIDEA's ability to assess whether the administrative record in this case is complete, and to effectively move for summary judgment on its pretext claim.

Regardless of the incomplete FOIA production, the evidence discussed here is sufficient to establish the existence of disputed issues of material fact as to DOI's rationale for cancelling AIDEA's leases. When an agency is reluctant to disseminate its official stated rationale sent to the lease holder, yet eager to proclaim a different message to the

---

[27] These officials were not lawyers; AIDEA is not suggesting that conflict of interest rules regarding lawyers apply to their conduct. *See* https://www.doi.gov/laura-daniel-davis

[28] The email chains reviewed above show their involvement in decision-making at BLM and DOI regarding the ANWR oil and gas program and AIDEA's leases.

[29] There are several FOIA requests, some raised in Case No. 24-cv-75-SLG.

AIDEA V. HAALAND, ET AL.     CASE NO. 3:24-CV-00051-SLG
PLAINTIFF AIDEA'S OPENING BRIEF ON COUNT II(B)     PAGE 10 OF 13
Case 3:24-cv-00051-SLG     Document 66     Filed 08/09/24     Page 11 of 14

public and the media, the message the agency proclaims to the public reflects the true reason for the agency's decision. Here, the message and rationale proclaimed to the public by Secretary Haaland (and to this Court by BLM's Director before she joined BLM) was that oil and gas development of pristine ANWR should never occur. These statements reflect the Secretary's sincere and true feeling as DOI's most senior decision-maker, but conflict with the Tax Act, which directs that DOI facilitate the development of the oil and gas resources of ANWR.[30] AIDEA has made a threshold-showing of DOI's pretextual decision-making; it must be allowed to explore that claim.

DOI asserts AIDEA must make an elevated "showing[] of bad faith" or 'improper purpose" before facts showing pretext can rise to the level of being "material," as necessary to establish a genuine issue of material fact under Rule 56.[31] But the case upon which DOI relies, *Biden v. Texas,* is inapposite because did not involve a pretext claim at all. *Id.* The case instead involved a general failure of the Department of Homeland Security (DHS) to "hew to the administrative straight and narrow" in a series of actions taken by DHS as its revised border security policies. *Biden v. Texas*, 597 U.S. at 811. The plaintiffs sought relief for a variety of reasons not grounded in pretext claims. DOI thus seeks to extend the opinion to circumstances not directly within its scope.

DOI also ignores a key factual difference. The *Biden* court quoted its earlier decision in *Dept. of Comm., supra,* for the principle that: "in reviewing agency action, a court is ordinarily limited to evaluating ***the agency's contemporaneous explanation*** in light of the

---

[30] Tax Act § 20001(b) and (c) (reviewing extensively in AIDEA's earlier briefs).
[31] DOI Brief at 25 (ECF 52) (quoting *Biden v. Texas*, 597 U.S. 785, 811-12 (2022)).

existing administrative record" unless a "strong showing of bad faith or improper behavior is made."[32] This erects hurdles for a plaintiff who claims that the agency's true explanation is not the reason given at the time by the agency.[33] Those hurdles do not apply in this case. Here there are <u>two</u> different "contemporaneous explanation[s]" for the same agency action, both given by DOI. Neither is unstated or secret. First, there is the written rationale provided to the lease-holder as stated in the Lease Cancellation Decision, which the agency initially kept confidential with limited circulation among senior DOI officials and later - emphasized in its communications to the public. Second, there are the Secretary's remarks to the press announcing the lease cancellation, communicating that DOI would never allow drilling in ANWR. Both explanations are admissible into evidence under normal APA judicial review standards. In asking the Court to consider admissible evidence and find that the second explanation reflects the agency's true motivation and rationale, AIDEA avoids the departures from ordinary judicial review principles that call for the reviewing court to impose an elevated standard of proof.[34]

In summary, AIDEA has raised genuine issues of material fact supporting its pretext claim, so DOI's motion for summary judgment on that claim must be denied. AIDEA's pretext claim should be held in abeyance while its other substantive claims are being evaluated by the Court. In the event the Court declines to enter summary judgment in

---

[32] *Id.* (emphasis added, quoting *Dept. of Comm.*, 588 U.S. at 811-12).

[33] *Dept. of Comm.*, 588 U.S. at 781. The plaintiff made the elevated showing through additional evidence being stipulated by the parties into the administrative record.

[34] *See Dept. of Comm.*, 588 U.S. at 781.

AIDEA V. HAALAND, ET AL.     CASE NO. 3:24-CV-00051-SLG
PLAINTIFF AIDEA'S OPENING BRIEF ON COUNT II(B)     PAGE 12 OF 13
Case 3:24-cv-00051-SLG     Document 66     Filed 08/09/24     Page 13 of 14

AIDEA's favor on its other claims, the parties should be directed to confer regarding the scope of discovery relevant to AIDEA's pretext claim, and to present proposals to the Court regarding the same so that it may enter an appropriate scheduling order.

DATED this 9TH day of AUGUST, 2024.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiff

By: /s/ James Lister
James Lister, ABA #1611111
Brian V. Gerd, ABA #1810097
David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of August, 2024, a true and correct copy of the foregoing was served on all parties to this case via the Court's CM/ECF electronic delivery system:

BIRCH HORTON BITTNER & CHEROT

By: /s/ James Lister