James Lister, ABA #1611111
Brian V. Gerd, ABA #1810097
David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
jlister@bhb.com
bgerd@bhb.com
dgross@bhb.com
zeisberg@bhb.com
Telephone 907.276.1550
Facsimile 907.276.3680

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, <br><br> Plaintiff, <br><br> vs. <br><br> U.S. DEPARTMENT OF THE INTERIOR, DEB HAALAND, in her capacity as Secretary of the Department of the Interior, BUREAU OF LAND MANAGEMENT, and TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; <br><br> Defendants. | Case No.: 3:24-CV-00051-SLG |

## **PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Concurrent with its opening brief on its Count II(b) "pretext" claim, Plaintiff AIDEA submits this motion to complete the administrative record, request judicial notice of documents, and request consideration of documents that fall within recognized exceptions to the principle that judicial review is on the administrative record.[1] As explained in that opening brief, AIDEA submits that DOI's real rationale for canceling AIDEA's leases was to prevent drilling in ANWR from ever occurring. That rationale is unmistakably conveyed in Secretary Haaland's remarks, made the day DOI issued the Lease Cancellation Decision, that: "With today's action no one will have rights to drill oil in one of the most sensitive landscapes on Earth."[2] AIDEA submits the different rationale DOI stated in the Lease Cancellation Decision it sent AIDEA was pretextual (AR 5353). In that much less publicized document, DOI committed to restart the ANWR oil and gas drilling program after fixing purported errors in the original issuance of leases to AIDEA.[3]

A.   **Introduction**

The current administrative record is sparse when it comes to internal materials exchanged among DOI employees leading up to the issuance of Deputy Secretary Beaudreau's Lease Cancellation Decision (AR 5353-59) and the corresponding press release (AR 5360-62). There is no email or other internal DOI correspondence within the

---

[1]    *See* Amend. Compl., Count II(b), ¶¶ 61-63 (ECF 11)

[2]    *See* DOI Answer to Amend. Compl., ¶ 61 (ECF 20); Joint Motion for Scheduling Order at 2, n. 1 (ECF 48) (parties agree to Court's consideration of the Secretary's remarks).

[3]    *See* AIDEA's opening brief on the Count II(b) pretext issue (submitted August 9, 2024).

administrative record.[4] Though DOI may have withheld some materials as deliberative, pre-decisional documents, the complete absence of internal-agency communications is striking.[5]

The omission of internal correspondence and evaluative documents from the record was not a problem as to the bulk of AIDEA's claims, which concerned due process and other procedural issues and statutory construction. Those other claims have already been fully briefed without incident, on the administrative record as it stood when the Court entered its scheduling order. The Court can begin considering those claims if it wishes to do so, and a Joint Appendix covering them will be filed in a few days.

However, a pretext claim is by its nature different from the other claims in that it seeks to determine the true rationale for an agency decision. Necessarily, this requires a more probing examination of intra-agency communications, and thus a more complete record.

Foreseeing this problem, AIDEA sought and obtained a phased briefing schedule that carved out and deferred briefing of the Count II(b) pretext claim while (1) AIDEA pursued FOIA requests and other avenues to obtain documents relevant to the pretext claim

---

[4]     *See* Index to the original Administrative Record (ECF 31) and its supplement (ECF 47).
[5]     DOI submitted a privilege log with the Administrative Record Index it provided to the Court (ECF 31-2, at 3). The only materials it identified as withheld from the record for privilege were documents or communications from the Solicitor General which were subject to attorney-client privileges.

to seek to add the record and (2) the parties briefed the other claims on the merits.[6] Relatedly, the parties agreed in their joint proposal for a scheduling order that AIDEA could later move to supplement the administrative record if it came into possession of additional materials, through FOIA responses or otherwise, that it believed should be considered.[7]

AIDEA's pursuit of FOIA and additional research has yielded additional documents relevant to the pretext claim. AIDEA now moves for their consideration by the Court.

### B. <u>Documents at Issue</u>

AIDEA moves to complete the administrative record by including in it three email chains among DOI employees regarding the cancellation of AIDEA's leases on September 6, 2023 and a statement by President Biden released that day. AIDEA also requests that the Court consider as permissible extra-record evidence a declaration that Tracy Stone-Manning, prior to assuming her role as Director of BLM, filed in related litigation before this Court. In that declaration, she expressed her opposition to any program authorizing oil and gas leasing in ANWR.[8]

Finally, AIDEA notes that at the time the parties submitted their joint request for a scheduling order, they reached an agreement that the Court may consider two additional

---

[6]     Joint Motion Regarding Scheduling Order at 2 (ECF 48) and the Scheduling Order and a related Order extending briefing deadlines (ECF 49 and 64).

[7]     The parties thus agreed AIDEA could file a motion to supplement the record later in the case than is normally allowed. Any party could oppose such a motion. (ECF 48. at 2-3).

[8]     AIDEA also seeks consideration of a press statement Stone-Manning made in connection with the filing of her declaration.

pieces of evidence: (1) a video clip of then-Candidate Biden's February 9, 2020 remarks responding to a question about drilling in ANWR, and (2) the statement made by DOI Secretary Haaland on September 6, 2023 announcing the lease cancellation.[9]

## C. **Completion and Supplementation of the Record**

If the record presented to the Court is not complete, "the requirement that the agency decision be supported by 'the record' becomes almost meaningless."[10]

Judicial review of agency actions must be based on the "whole record," including "everything that was before the agency pertaining to the merits of its decision."[11] "The whole administrative record…' is not necessarily those documents that the agency has compiled and submitted as the administrative record,'" it includes "all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position."[12]

Indirect consideration sufficient to bring a document within the records applies to documents and materials relied upon and considered by the decision-maker's subordinates

---

[9]     The agreement as to admissibility of Secretary Haaland's remarks was recorded in the parties' joint proposal (ECF 48 at 2, n. 1) while the agreement as to the admissibility of the Candidate Biden video clip was recorded in correspondence exchanged between counsel.

[10]     *Portland Audubon Soc. v. Endangered Species Comm*, 984 F.2d 1534, 1548 (9th Cir. 1993).

[11]     *Portland Audubon Soc.,* 984 F.2d at 1548.

[12]     *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in the original).

who provided advice or recommendations for the agency action.[13] Logically then, documents showing a subordinate played a role in decision-making on the matter at hand are also part of the record.

An agency's statement of what constitutes the complete record is entitled to a presumption of regularity, but that presumption is rebuttable by clear evidence to the contrary.[14] Clear evidence is "reasonable, non-speculative grounds for their belief that documents were considered by the agency and not included in the record."[15] Plaintiff must identify omitted materials with specificity, rather than proffering broad categories of documents likely to exist.[16] Here, Plaintiff attaches to this motion specific documents it proposes for consideration by the Court, rather than hypothesizing documents by category.

In this case, the total omission of internal DOI communications from the filed administrative record created reasonable doubt, really a practical certainty, that the record was incomplete. It "strains credulity" to believe that DOI would terminate the lease

---

[13]     *In re United States*, 875 F.3d 1200, 1207 (9th Cir.), <u>cert. granted, judgment vacated</u> on grounds that the District Court was required to consider threshold arguments advanced by the government, 583 U.S. 29 (2017) ("District courts in this and other circuits, however, have interpreted that phrase ['indirectly considered'] to include materials relied on by subordinates who directly advised the ultimate decision-maker" followed by a string cite including such decisions.). *See also Regents of Univ. of California v. United States Dep't of Homeland Sec.,* 2017 WL 4642324, at *2 (N.D. Cal. Oct. 17, 2017) ("This includes not only documents that "literally pass[ed] before the eyes of the final agency decision maker" but also documents that were considered and relied upon by subordinates who provided recommendations to the decision-maker.").

[14]     *Goffney v. Becerra*, 995 F.3d 737, 747 (9th Cir. 2021).

[15]     *California v. U.S. Dep't of Lab.*, 2014 WL 1665290, at *5 (E.D. Cal. Apr. 24, 2014).

[16]     *Id.*

agreements DOI had issued to AIDEA without leaving any email trail whatsoever.[17]

Unsurprisingly, FOIA has revealed that DOI managers, including BLM Director, Stone-Manning and DOI's Principal Deputy Assistant Secretary for Land and Minerals Management Laura Daniel-Davis, as well as other DOI employees, communicated by email regarding the cancellation of AIDEA's leases. The email correspondence sheds light on the Lease Cancellation Decision and is relevant to the pretext claim.[18] President Biden's statement regarding the lease cancellation also sheds light on the agency's reasoning, as discussed below.

### Exhibit 1 – OMB Questions Regarding Cancellation of AIDEA's Leases

Exhibit 1 is a chain of internal emails among DOI employees with the subject line "OMB Questions on Press Release for Arctic Lands and Wildlife in Alaska."[19] These email conversations occurred on September 6th and 7th, 2023, as DOI employees determined how to respond to questions raised by an employee of the White House Office of Management and Budget ("OMB") who had concerns with whether DOI's September 6, 2023 decision canceling AIDEA's leases had been properly vetted. The correspondence originates within hours after DOI issued its press release announcing the cancellation of AIDEA's lease

---

[17]    *See In re United States,* 875 F.3d 1200, 1207 (9th Cir.), cert. granted, judgment vacated on grounds that the District Court was required to consider threshold arguments advanced by the government, 583 U.S. 29 (2017) (finding that it "strained credulity" to believe that the administrative record for the Department of Homeland Security's decision to terminate DACA was complete when the record did not include any documents from the acting Secretary's subordinates.)

[18]    Additional FOIA productions are being received each month from DOI. AIDEA is working with the documents it has received to date.

[19]    For simplicity, we refer to both BLM and DOI employees as "DOI" employees.

agreements (AR 5360-62). Based on the email chain, an OMB employee emailed the news release to a DOI employee and apparently called that DOI employee to ask for further explanation regarding the justifications for the lease cancellation. The OMB employee requested clarification as to how exactly the January 2021 Lease Sale had violated the Tax Act, whether attorneys within the DOI Solicitor's Office were included in reaching this decision to cancel the leases, and if DOI had consulted with OMB or the White House prior to making its decision.

These questions from OMB on the rationale for lease cancellation were relayed up the chain of command within 24 hours, all the way to the attention of Stone-Manning and Deputy Director Nada Culver. Employees from the Solicitor's Office weighed in on how DOI should respond to these questions, providing redacted advice protected by attorney-client privilege. The email chain does not include DOI's ultimate response to OMB. Stone-Manning and Culver concluded, "a conversation would make more sense to start since some of it seems a bit squishier." However, the email chain does suggest that Stone-Manning was involved in decision-making regarding the cancellation of AIDEA's leases, in that she was involved in preparing a response to what appeared to be internal concerns (perhaps dissent) within the Executive Branch regarding lease cancellation.[20] Stone-Manning's involvement in decision-making at DOI is relevant because, as discussed

---

[20] Stone-Manning, the Senate-confirmed head of the component agency within DOI with responsibility for this oil and gas leasing, was thus an involved subordinate. *See* n. 13 above (discussing *In re United States,* 875 F.3d at 1207 and *Regents of Univ. of California,* 2017 WL 4642324, at *2).

below, she had participated in related litigation before this Court on behalf of project opponent National Wildlife Federation ("NWF") in which she expressed her unequivocal opposition to oil and gas development in ANWR.[21]

The "whole" administrative record must include all materials considered by the agency, even those that are contrary to its ultimate position.[22] The email chain supplied as Exhibit 1 to this Motion should be admitted to complete the record, both because of its discussion of apparent internal dissent to the agency decision being reviewed and because it indicates that Stone-Manning was involved in decision-making and not recused.

### Exhibit 2 – Emails Regarding Congressional Requests for DOI's Cancellation Decision

Exhibit 2 is an email chain involving a request by a Congressional staffer on September 6, 2023 (renewed on September 11, 2023) for a copy of whatever decision document (beyond DOI's news release) explained DOI's decision that day to cancel AIDEA's leases. The chain shows that simple request being escalated multiple steps up the bureaucratic ladder all the way to BLM Director Stone-Manning and DOI Deputy Assistant Secretary Daniel-Davis. On September 13, the request reached BLM Deputy Director Nada Culver. She then emailed the request along to BLM Director Stone-Manning and DOI Deputy Assistant Secretary Daniel-Davis seeking advice on how to respond, explaining that she understood the "rationale is provided in a letter that went to AIDEA but wasn't made public." Deputy Director Culver continued stating that she herself had not

---

[21]     *See* Exhibits 5 and 6 to this Motion and further discussion regarding them.

[22]     *Thompson,* 885 F.2d at 551.

seen this letter explaining DOI's rationale for cancellation and that DOI would likely need to provide an answer as to the justifications for its decision which had now been requested by both Congressional Staff and OMB. Director Stone-Manning and Deputy Assistant Secretary Daniel-Davis then confer privately by email. They worry that other requests for the Lease Cancellation Decision may be coming, and conclude that releasing or not releasing the Lease Cancellation Decision was a sensitive matter requiring further consideration.[23]

This exchange is pertinent to AIDEA's position that the official rationale for canceling AIDEA's leases, embodied in the Lease Cancellation Decision (which these emails show DOI kept confidential for at least a week after issuing it, and was reluctant to circulate) was a pretext. AIDEA submits that the real rationale announced was pronounced far more publicly in Secretary Haaland's September 6, 2023 statement (quoted above) and President Biden's September 6, 2023 statement (Exhibit 4, reviewed below).

The email chain is relevant to an important aspect of the Lease Cancellation Document: was it confidential, non-confidential but de-emphasized as compared to Secretary Haaland's statement, or fully publicized? Was the Lease Cancellation Decision the explanation for lease cancellation that DOI provided to the public? Or was it just the explanation that DOI provided to AIDEA and the Court? These issues shed light on the

---

[23] Daniel-Davis was also a former NWF employee. Unlike Stone-Manning, Daniel-Davis has explained that she was not involved in NWF's litigation against the ANWR oil and gas program. *See* AIDEA opening brief on pretext issue at 10 (providing further information).

nature of the Lease Cancellation Decision itself. The email chain also references the OMB inquiry discussed above expressing concern about the lawfulness of lease cancellation. Thus, the issue of the extent to which the formal Lease Cancellation Decision would become public and OMB's expression of concern are intertwined.[24]

There may be disagreement on what conclusions to draw from this information but it is properly part of the Administrative Record. Whether an agency decision document is confidential, public but de-emphasized, or fully public is an aspect of the decision itself. It does not matter whether this aspect of the decision is expressed in the decision itself or a contemporaneous email among senior agency officials discussing the decision document. Either way, the information is properly part of the record. Additionally, the chain further confirms the role of BLM Director Stone-Manning in the case, and thus the importance of her pre-held and emphatically expressed views (Exhibits 5 and 6).

### Exhibit 3 – Emails Regarding Timing of the Release of the Draft SEIS

Exhibit 3 is a Tuesday, September 5, 2023 email among DOI staff reporting that the day before, Labor Day, BLM Director Stone-Manning directed the team to prepare the Draft ANWR Oil and Gas SEIS for publication that week. The email reports that it was unusual to receive a request on Labor Day to accelerate work and that the team was "on over drive." Further, Director Stone-Manning instructed the staff not to inform the Cooperating Agencies assisting DOI with this NEPA work of its accelerated plans for

---

[24]     Compare Exhibit 1 and Exhibit 2.

releasing the draft.[25] The next day, on Wednesday, September 6, 2023, DOI announced the cancellation of AIDEA's leases and issued the Draft SEIS, which it formally published in the Federal Register later that week.

Director Stone-Manning's directive to accelerate work on finalizing the Draft SEIS (AR 3923) shows her role in the decision-making pertinent to the decision to cancel AIDEA's leases. The Lease Cancellation Decision cites to and relies on the Draft SEIS. (AR 5356-57, n.5). Her decisions to cut cooperating agencies out of the loop at the last minute and accelerate the issuance of the Draft SEIS, evidently so that it could be issued on the same day DOI announced lease cancellation, are relevant to the quality of the Draft SEIS, on which the Lease Cancellation Decision relied. Her role in the process is relevant, again, because of her previously announced opposition to the oil and gas program in ANWR. The email chain supplied as Exhibit 3 is a proper part of the administrative record.

**Exhibit 4 – President Biden's Statement Regarding Lease Cancellation**

President Biden's statement supporting the decision to cancel AIDEA's leases is supplied in Exhibit 4. It is published on the White House website.[26] The statement should be judicially noticed by the Court.[27] Its content cannot be disputed and it was issued by the President on the same day as DOI announced the cancellation of AIDEA's leases. It reflects

---

[25]     Ex. 3 ("Our team is now in over drive getting everything prepped for the release, Cooperating Agency meeting (we were asked specifically not to let them know its coming yet), and the public meetings/hearings.")).

[26]     https://www.whitehouse.gov/briefing-room/statements-releases/2023/09/06/statement-from-president-joe-biden-on-protecting-arctic-lands-and-wildlife-in-alaska/

[27]     Fed. R. Evid. 201.

the views of the Head of the Executive Branch supporting the cancellation of AIDEA's leases, and thus is a proper part of the administrative record. A contemporaneous statement by the President is pertinent to review a decision made by one of his subordinate agencies, here DOI. A judicial review plaintiff cannot realistically hope to know the contents of communications between the President and an agency's highest official (Secretary Haaland). However, when the two issue similar statements on the same day the agency makes a decision, one must presume there was coordination and the President was involved at least in the sense of approving the decision. The relevance of the President's statement is enhanced when as here, the Plaintiff's claim is that the President's views fairly reflect the agency's actual rationale for decision. The President's statement is both subject to judicial notice and a proper part of the record.

### D.     Permissible Extra-Record Evidence

The Ninth Circuit recognizes four exceptions to the general rule that judicial review is limited to the facts and information within the administrative record. District courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when

plaintiffs make a showing of agency bad faith."[28] [29] "The party seeking to admit extra-record evidence initially bears the burden of demonstrating that relevant exception applies."[30] Supplementation of the record through the introduction of extra-record evidence "is appropriate when the added materials are 'necessary to explain agency action.'"[31] Although these exceptions are "narrowly construed," "[i]n general, courts are inclined to supplement administrative records when the proffered documents are relevant and help them evaluate whether the agency considered all relevant factors."[32]

### Exhibit 5 – Stone-Manning's Declaration to this Court

BLM Director Stone-Manning's Declaration, filed with this Court in December 2020 while she was employed by NWF, is supplied as Exhibit 5.[33] In her Declaration she expresses her unqualified opposition to the oil and gas development of ANWR. The Court can take judicial notice of its own records.[34] The document qualifies for consideration as extra-record evidence under a recognized exception to the rule that

---

[28]    *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

[29]    The internal DOI email chains set forth as Exhibits 1-3 properly belong within the administrative record. However, these exceptions authorizing the Court's review of extra-record evidence very likely also apply.

[30]    *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014).

[31]    *Alaska v. United States Dep't of the Interior*, 2023 WL 2424270, at *7 (D. Alaska Mar. 9, 2023).

[32]    *Id.*

[33]    *Gwich'in Steering Committee et al. v. Bernahrdt*, Declaration of Stone-Manning, 3:20-cv-00204-SLG (ECF 47-15).

[34]    *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records.").

judicial review is on the administrative record. The declaration established Director Tracy Stone-Manning's pre-established views opposing oil and gas development in ANWR. The very existence of those views on the part of one of its senior officials is information the agency "should have considered" in making its decision, and thus goes to whether the agency "has considered all relevant factors." An agency should consider whether its senior officials involved in decision-making have demonstrated pre-set views or bias.[35]

### Exhibit 6 – Stone-Manning's Statement to the Press Accompanying Her Declaration

Stone-Manning's statement to the press on behalf of NWF that accompanied her December 2020 Declaration is supplied as Exhibit 6. That statement is even more emphatic in expressing her unqualified total opposition to oil and gas development in ANWR. As

---

[35] In *National Audubon Society v. U.S. Army Corps of Engineers*, the U.S. District Court for the Eastern District of North Carolina granted a motion to supplement the record allowing the introduction of emails as extra-record evidence that purported to show a possible conflict of interest in the Corps of Engineers' approval of a permitting decision. *Nat'l Audubon Soc'y v. United States Army Corps of Engineers*, 2018 WL 4760124, at *4 (E.D.N.C. Sept. 30, 2018). In *Abatie v. Alta Health & Life Ins. Co.*, a case involving a dispute of the denial of life insurance benefits under a welfare plan regulated by the Employee Retirement Income Security Act ("ERISA"), the Ninth Circuit ruled that "the court may consider evidence beyond that contained in the administrative record that was before the plan administrator to determine whether a conflict of interest exists that would affect the appropriate level of judicial scrutiny." 458 F.3d 955, 970 (9th Cir. 2006). Further, "[t]he district court, may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." *Id.* Judicial review under ERISA is analogous to judicial review under the Administrative Procedure Act in many ways.

with her Declaration, her accompanying press statement is admissible because information regarding her bias or pre-set inclinations as a senior official at DOI is information that "should have been considered" by other even more senior decision-makers at DOI.

**E.** <u>**Conclusion**</u>

For these reasons above, the Court should grant AIDEA's Motion to Supplement the Administrative Record.

DATED this <u>9TH</u> day of <u>AUGUST</u>, 2024.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiff

By: <u>/ s / James Lister</u>
James Lister, ABA #1611111
Brian V. Gerd, ABA #1810097
David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 9th day of August, 2024, a true and correct copy of the foregoing was served on all parties to this case via the Court's CM/ECF electronic delivery system:

BIRCH HORTON BITTNER & CHEROT

By: <u>/ s / James Lister</u>