# EXHIBIT 5

Brook Brisson (AK Bar No. 0905013)
Suzanne Bostrom (AK Bar No. 1011068)
Bridget Psarianos (AK Bar No. 1705025)
Brian Litmans (AK Bar No. 0111068)
TRUSTEES FOR ALASKA
1026 W. Fourth Avenue, Suite 201
Anchorage, AK 99501
Phone: (907) 276-4244
Fax: (907) 276-7110
bbrisson@trustees.org
sbostrom@trustees.org
bpsarianos@trustees.org
blitmans@trustees.org

*Attorneys for Plaintiffs Gwich'in Steering
Committee, Alaska Wilderness League, Alaska Wildlife Alliance,
Canadian Parks & Wilderness Society-Yukon,
Defenders of Wildlife, Environment America,
Friends of Alaska National Wildlife Refuges,
National Wildlife Federation, National
Wildlife Refuge Association, Northern
Alaska Environmental Center, Sierra Club,
The Wilderness Society, and Wilderness
Watch*

Karimah Schoenhut (pro hac vice)
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
50 F St., NW 8th Floor
Washington, DC 20001
Phone: (202) 548-4584
Fax: (202) 547-6009
karimah.schoenhut@sierraclub.org

*Attorney for Plaintiff Sierra Club*

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DECL. OF TRACY STONE-MANNING                                    Page 1 of 8
*Gwich'in Steering Committee, et al. v. Bernhardt, et al.*, Case No. 3:20-cv-000204-SLG

Exhibit 5
Case 3:20-cv-00204-SLG   Document 48-65   Filed 08/05/24   Page 2 of 9   1 of 8

| GWICH'IN STEERING COMMITTEE, et al., | Case No. 3:20-cv-00204-SLG |
|---|---|
| Plaintiffs, | |
| v. | |
| DAVID BERNHARDT, et al., | |
| Defendants, | |
| and | |
| NORTH SLOPE BOROUGH, et al., | |
| Intervenor-Defendants. | |

**DECLARATION OF TRACY STONE-MANNING**

I, Tracy Marie Stone-Manning, hereby declare as follows:

1. I am making this declaration in support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction in the above-captioned litigation. I know these facts of my own personal knowledge and would competently testify to them if called as a witness in these proceedings.

2. I earned a Bachelor's of Arts in radio, television, and film from the University of Maryland and a Master's of Science in environmental studies from the University of Montana. Prior to working at National Wildlife Federation (NWF) I served as Montana Governor Steve Bullock's chief of staff, was the director of the Department

DECL. OF TRACY STONE-MANNING                                          Page 2 of 8
*Gwich'in Steering Committee, et al. v. Bernhardt, et al.*, Case No. 3:20-cv-000204-SLG

Exhibit 5

Case 3:20-cv-00204-SLG   Document 48-65   Filed 08/09/24   Page 3 of 9                 2 of 8

of Environmental Quality in Montana, and served as a natural resource adviser and state director for Montana Senator Jon Tester.

3. I joined NWF three years ago as the Associate Vice President for Public Lands. As the Associate Vice President for Public Lands, I lead the NWF public lands team. I am also a member of NWF. NWF has a long history in the world of conservation. The organization's broad reach, and its "big tent" approach to include all voices of conservation drove me to become a member. I also joined because the values and goals of the organization reflect my long standing commitment to iconic landscapes such as the Arctic.

4. In my capacity as Associate Vice President for Public Lands, I am familiar with all aspects of NWF's activities and organizational interests related to Alaska and the Arctic National Wildlife Refuge (Arctic Refuge or Refuge).

5. NWF is a 501(c)(3) nonprofit organization incorporated in Virginia. Our offices are located across the country, including in California, Colorado, Georgia, Louisiana, Maryland, Michigan, Montana, Texas, Vermont, Virginia, and Washington, DC. We have approximately six million members, with 20,380 members in Alaska.

6. NWF is committed to uniting all Americans to ensure wildlife thrive in a rapidly changing world. We believe America's experience with cherished landscapes and wildlife has helped define and shape our national character and identity for generations. Protecting these natural resources is a cause that has long united Americans from all

DECL. OF TRACY STONE-MANNING  Page 3 of 8
*Gwich'in Steering Committee, et al. v. Bernhardt, et al.*, Case No. 3:20-cv-000204-SLG

Exhibit 5
Case 3:20-cv-00204-SLG   Document 48-5   Filed 08/05/20   Page 4 of 9
3 of 8

walks of life and political stripes. To hunters, anglers, hikers, birders, wildlife watchers, boaters, climbers, campers, cyclists, gardeners, farmers, forest stewards, and other outdoor enthusiasts, this conservation ethic represents a sacred duty and obligation to protect and build upon our conservation heritage for the sake of wildlife, ourselves, our neighbors, and — most of all — for future generations.

7. Our program goal for the Arctic Refuge is to preserve the Coastal Plain of the Arctic Refuge as one of the last truly unspoiled places on earth. This includes preventing any form of leasing for oil and gas development in recognition that the Refuge, and the habitat and pristine wilderness it provides for polar bear, wolves, caribou, musk oxen, migratory birds, and countless other wildlife is irreplaceable.

8. NWF has worked for decades on protecting the Arctic Refuge. We formally recognized the value of the Coastal Plain of the Arctic Refuge in 1989 in an internal policy resolution. Since 2001, it has been our internal policy and goal to work toward a Congressional designation of the Coastal Plain as Wilderness.

9. NWF has engaged in many advocacy efforts to protect the Refuge, including testifying in support of the Alaska National Interest Lands Conservation Act, working with a broad coalition to block efforts to drill in the Refuge following the Exxon Valdez oil spill, and engaging in lobbying and grassroots efforts during the George W. Bush Administration — including testifying before Congress, organizing rallies, fly-ins, Congressional visits, and reports. We have also worked with and supported the Gwich'in

DECL. OF TRACY STONE-MANNING Page 4 of 8
*Gwich'in Steering Committee, et al. v. Bernhardt, et al.*, Case No. 3:20-cv-000204-SLG

Exhibit 5

Case 3:20-cv-00204-SLG Document 48-65 Filed 08/09/24 Page 4 of 8 / 4 of 8

and their efforts to protect the Coastal Plain. Our efforts have also specifically focused on gaining Wilderness designation for the Coastal Plain through lobbying and grassroots and public engagement.

10. NWF engaged in a grassroots outreach and lobbying efforts to advocate against opening the Refuge under the 2017 Tax Act to oil and gas development. Subsequently, we have worked with a coalition of indigenous and environmental groups to strongly oppose the Trump Administration's plan to begin oil and gas leasing in the Coastal Plain. We signed on to the coalition's comments on the draft Environmental Impact Statement (EIS). In addition, NWF advocates for the Refuge in Congress, engaging in legislative advocacy at our highest levels. We educate the public and create awareness about the importance of the Coastal Plain through social media posts and in the news media. I have published several opinion letters highlighting the issue. NWF aims to expand this work into grassroots field organizing in key states, dependent on funding.

11. NWF has taken board members, members, and donors on trips to the Arctic Refuge. For example Larry Schweiger, NWF's former CEO traveled to the Refuge during his first summer as CEO. He traveled with donors Diana Blank and Beatrice Bush Vongontart.

DECL. OF TRACY STONE-MANNING  Page 5 of 8
*Gwich'in Steering Committee, et al. v. Bernhardt, et al.*, Case No. 3:20-cv-000204-SLG

Exhibit 5

Case 3:20-cv-00204-SLG   Document 48-5   Filed 08/09/20   Page 6 of 9      5 of 8

12. I have yet to visit the Arctic Refuge, although it's a life goal of mine to visit the Coastal Plain. And even if I cannot, knowing that this large chunk of wild land exists in this country brings me great solace.

13. As one of the largest conservation organizations in the United States, and also as voice for outdoor sportsmen such as hunters, anglers, and birders, it is important that NWF oppose activity in the Refuge to give a voice to our members. The Arctic Refuge was set aside for the purposes of protecting wilderness, recreational values, and wildlife habitat. Bureau of Land Management's (BLM) plan to allow oil and gas leasing, seismic exploration, and other oil and gas activities in the Refuge undermines and is inconsistent with these important and unique values.

14. NWF is concerned about BLM's failure to allow for meaningful public comment and address our concerns. What this means is that our members — all of whom believe in the proper management of public lands for fish, wildlife, and communities — were not afforded sufficient opportunities to comment on the proposed use of the Refuge. The final EIS and Record of Decision do not adequately address our concerns, and the concerns submitted by our members, such as providing a reasonable range of alternatives to protect the Refuge's sensitive resources, nor do they include an adequate analysis of impacts to the Mollie Beattie Wilderness and other key Coastal Plain resources or ways to address those impacts. Had BLM done a more rigorous analysis, it would have perhaps reached a different, less extraction-focused decision, and provided more

DECL. OF TRACY STONE-MANNING                                                   Page 6 of 8
*Gwich'in Steering Committee, et al. v. Bernhardt, et al.*, Case No. 3:20-cv-000204-SLG

Exhibit 5

Case 3:20-cv-00204-SLG   Document 48-5   Filed 08/09/20   Page 6 of 9        6 of 8

protections for the Coastal Plain, its resources, and the Wilderness, as required by law. BLM also opened the entire Coastal Plain to seismic exploration and is now rushing through its approval for a seismic exploration proposal. BLM never did an adequate analysis of the impacts of seismic exploration or ways to address the serious damage it is likely to cause to the Coastal Plain.

15. A number of our members have visited the Coastal Plain and the Wilderness and value it for the hunting, fishing, and wilderness opportunities it provides — all of which would be in jeopardy if leasing, exploration, and development are allowed. Our members' ability to continue engaging in these activities on the Coastal Plain will be harmed by oil and gas activities. One of our missions is to protect public lands, and our members expect us to fight for these lands. The Refuge is one of the most pristine places in our country; its loss to development would be a significant loss ecologically but also programmatically: if we can't stop development in a place this wild, how can we be expected to protect other places?

16. NWF is funded by charitable contributions from individuals and grant-making institutions. Much of our funding is restricted by the funding sources to be used for specific purposes by agreement between NWF and the funder. These funds have therefore already been spent or will be spent for the restricted purposes for which they were earmarked. NWF has no funding dedicated to this litigation that could be used to cover the cost of an injunction bond. NWF's budget is committed to existing and ongoing

DECL. OF TRACY STONE-MANNING　　　　　　　　　　　　　　　　　　　　Page 7 of 8
*Gwich'in Steering Committee, et al. v. Bernhardt, et al.*, Case No. 3:20-cv-000204-SLG

Exhibit 5

Case 3:20-cv-00204-SLG   Document 48-5   Filed 08/09/20   Page 8 of 9
7 of 8

programs, which includes salaries and benefits for existing staff members. Given our limited operating budget and restrictions on the use of most of our funding, NWF would be unable to participate in this litigation if ordered to pay more than a nominal bond.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10 day of December 2020 in Missoula, Montana.

_____
Tracy Stone-Manning

DECL. OF TRACY STONE-MANNING                                                           Page 8 of 8
Gwich'in Steering Committee, et al. v. Bernhardt, et al., Case No. 3:20-cv-000204-SLG

Exhibit 8

Case 3:20-cv-00204-SLG   Document 47-45   Filed 02/05/21   Page 9 of 9