TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

PAUL A. TURCKE (Idaho Bar No. 4759)
Trial Attorney, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY,<br><br>Plaintiff,<br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>Defendants,<br>and<br><br>GWICH'IN STEERING COMMITTEE, *et al.*,<br><br>Intervenor-Defendants. | Case No. 3:24-cv-00051-SLG |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

This matter is before the Court on cross motions for summary judgment. Midway through the cross motions, Plaintiff Alaska Industrial Development and Export Authority

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 1

("AIDEA") has filed a Motion to Supplement the Administrative Record, ECF No. 68 (the "Motion"). AIDEA proposes six exhibits for consideration by the Court either "to complete the administrative record," through judicial notice, or as extra-record material. Mot. 2. In each case AIDEA fails to meet its burden to demonstrate that expanding the record for judicial review is warranted, and thus the Court should decline to accept the proffered materials. Regardless, the proffered materials and the Motion only illuminate the futility of AIDEA's arguments on the merits of its claims – it is fighting to reinstate oil and gas leases in the Arctic Refuge that were unlawfully issued due to defects in the creation of the Coastal Plain Oil and Gas Leasing Program. Defendant U.S. Bureau of Land Management ("BLM") has been conducting an environmental analysis to address those defects in order to lawfully resume the Program and offer its second lease sale. The Court should deny the Motion.

## I. Background

AIDEA seeks to supplement the administrative record with six exhibits.

Exhibit 1 is an email thread entitled "OMB questions on Press Release fo[r] Arctic Lands and Wildlife in Alaska." Mot. Ex. 1, ECF No. 68-2. Those emails address a post-decisional inquiry from an employee in the Office of Management and Budget ("OMB"), within the Executive Office of the President, seeking "to make sure [the employee] completely understands the [lease cancellation] decision and rationale, and their implications." *Id*. at 4.[1]

[1] Throughout this brief, the citations to Plaintiff's filings refer to the ECF-stamped page numbers from the docket.

Exhibit 2 is an email thread also triggered by the news release announcing the lease cancellation decision. *See* Mot. Ex. 2, ECF No. 68-3. The thread was initiated by a staffer with the Senate Committee on Energy and Natural Resources asking about the lease cancellation "mechanism" and requesting a copy of "any decision documents." *Id.* at 3-4.

Exhibit 3 is an email from a staff employee with the U.S. Fish and Wildlife Service to certain recipients within the Department of the Interior ("DOI") about a draft environmental analysis this is not challenged in this litigation. That email relays that the BLM Director instructed staff "to upload the Draft [Supplemental Environmental Impact Statement ("SEIS")] for publication" on September 8, 2023.[2] Mot. Ex. 3 at 2, ECF No. 68-4. The reference to "publication" on September 8 refers to Federal Register publication of the Environmental Protection Agency ("EPA") Notice of Availability for the Draft SEIS. *Id.*; *see also* 40 C.F.R. § 1506.10(a) (describing necessity and effect of EPA publication of notice). The Draft SEIS was issued to the public on September 6, 2023, when it was posted to BLM's ePlanning website. *See* Admin. Record Index 2, ECF No. 18-2; *see also* https://eplanning.blm.gov/eplanning-ui/project/2015144/570 (last visited Aug. 23, 2024).

Exhibit 4 is a post-decisional "Statement from President Joe Biden on Protecting Arctic Lands and Wildlife in Alaska." Mot. Ex. 4, ECF No. 68-5. It says:

Alaska is home to many of America's most breathtaking natural wonders

---

2 The text of the email states the targeted publication would be "this Friday, August 8th" but that is clearly an error since the email is dated September 5, 2023, and August 8, 2023, was a Tuesday.

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 3

> and culturally significant areas. As the climate crisis warms the Arctic more than twice as fast as the rest of the world, we have a responsibility to protect this treasured region for all ages. Canceling all remaining oil and gas leases issued under the previous administration in the Arctic Refuge and protecting more than 13 million acres in the Western Arctic will help preserve our Arctic lands and wildlife, while honoring the culture, history, and enduring wisdom of Alaska Natives who have lived on these lands since time immemorial. From day one, I have delivered on the most ambitious climate and conservation agenda in our country's history. But there is more to do, and my administration will continue to take bold action to meet the urgency of the climate crisis and to protect our lands and waters for generations to come.

*Id*. at 2.

Exhibit 5 is a December 2020 declaration by Tracy Stone-Manning that was filed in *Gwich'in Steering Committee v. Bernhardt*, No. 3:20-cv-00204-SLG (D. Alaska), one of four cases, now stayed, challenging BLM's establishment of the Arctic Refuge Coastal Plain Oil and Gas Leasing Program. *See* Mot. Ex. 5, ECF No. 68-6. At the time she signed the declaration, Ms. Stone-Manning was the Associate Vice President for Public Lands at the National Wildlife Federation ("NWF"). *Id*. at 4, ¶¶3-4. In September 2021 she was confirmed as the Director of BLM. *See* https://www.blm.gov/bio/tracy-stone-manning (last visited Aug. 23, 2024).

Exhibit 6 is a December 2020 news release entitled "Indigenous, allied groups go to court to stop issuance of Arctic Refuge leases." Mot. Ex. 6, ECF No. 68-7. It describes a motion filed by the *Gwich'in Steering Committee* plaintiff group "requesting a preliminary injunction to stop [BLM] from issuing any leases sold in the Jan. 6 sale of the coastal plain of the Arctic National Wildlife Refuge." *Id*. at 3. It attributes quotations to representatives of the various plaintiff group members, including one from Ms. Stone-

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 4

Manning on behalf of NWF. *Id*. at 7. This Court denied the motion for preliminary injunction. *See Gwich'in Steering Comm.*, Nos. 3:20-CV-00204-SLG, 3:20-cv-00205-SLG, 3:20-cv-00223-SLG, 2021 WL 46703 (D. Alaska Jan. 5, 2021).

**II. There is No Basis to Further Complete the Administrative Record**

AIDEA contends that the Court should consider Exhibits 1-4 because they are necessary to complete the administrative record. *See* Mot. 7-13. But AIDEA offers only speculative theories as to how these largely post-decisional documents relate to the lease cancellation decision, none of which address its burden to show that these materials were considered in making that decision.

The "focal point" for judicial review of agency action "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). A court "shall review the whole record or those parts of it cited by a party," 5 U.S.C. § 706, in determining whether an agency action "was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'" *id*. § 706(2)(A). The whole record "consists of all documents and materials directly or *indirectly* considered by agency decision-makers." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Thus, it is inappropriate "to use post-decision information as a new rationalization either for sustaining or attacking the Agency's decision." *Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 811-12 (9th Cir. 1980). An agency's determination of what comprises the administrative record is entitled to a "presumption of regularity" that can be overcome only by "clear evidence to the

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 5

contrary." *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024) (internal quotation marks and citation omitted). To "meet this standard, the plaintiff must identify the allegedly omitted materials with sufficient specificity and identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Dep't of Fish & Game v. Fed. Subsistence Bd.*, No. 3:20-CV-00195-SLG, 2021 WL 6845297, at *1 (D. Alaska May 4, 2021) (internal quotation marks and citations omitted).[3]

Half of AIDEA's proffered exhibits could not have been considered by the agency decision maker because they were generated after the challenged lease cancellation decision. This conclusion is intuitive – the agency decision maker could not have directly or indirectly considered documents that did not exist when the decision was made. A case that AIDEA cites punctuates this commonsense point – "e-mails exchanged after issuance of the [decision] could not have been considered in formulating the [decision]." *Nat'l Audubon Soc'y v. U.S. Army Corps of Eng'rs*, No. 7:17-CV-162-FL, 2018 WL 4760124, at *3 (E.D.N.C. Sept. 30, 2018); *see* Mot. 15 n.35.

Exhibits 1, 2, and 4, all suffer from this defect. Exhibits 1 and 2 are email threads that originate from the news release announcing the decision, and Exhibit 4 reflects the President's separate statement addressing the decision and other Alaska issues, a step

---

3 AIDEA acknowledges the first prong of this duty – that it "identify omitted materials with specificity, rather than proffering broad categories of documents likely to exist." Mot. 6. But it fails to address the second prong, requiring that it identify reasonable, non-speculative grounds for the belief that the identified documents were considered in making the challenged agency decision.

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 6

further removed and released after the decision was signed.

In addition to failing to show that any of these first four exhibits were considered in making the decision, AIDEA offers purely speculative theories as to how the materials even relate to the decision. Put differently, the materials are not about substantive considerations that may have informed the decision, but instead reflect administerial subjects like providing copies of the decision to requesters, formal publication of the Draft SEIS, and post hoc communications regarding the decision. In short, AIDEA "do[es] not make any non-conclusory attempts to assert that [DOI] considered those documents in its decision-making process." *Kloosterboer Int'l Forwarding LLC v. United States*, No. 3:21-CV-00198-SLG, 2021 WL 5984989, at *2 (D. Alaska Dec. 16, 2021).

Additionally, AIDEA provides no basis for the Court to order inclusion of unspecified "internal DOI communications" in the administrative record. Mot. 6. And even if AIDEA pointed to specific internal communications, the Ninth Circuit has resolved the previous "split on the issue" and held that such internal "deliberative materials are generally not part of the [administrative record] absent impropriety or bad faith by the agency." *Blue Mountains*, 99 F.4th at 444-45 (citing *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)); *see also Ctr. for Biological Diversity v. Zinke*, No. 3:18-CV-00064-SLG, 2018 WL 8805325, at *4 (D. Alaska Nov. 16, 2018).

Reviewing the proffered materials illuminates the flaws in AIDEA's argument. AIDEA contends that Exhibit 1 might reflect "what appeared to be internal concerns (perhaps dissent) within the Executive Branch regarding lease cancellation." Mot. 8. But

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 7

the email thread is about scheduling a call "to discuss this announcement further," *i.e.*, the news release announcing the challenged decision. Ex. 1 at 4. It reflects a single employee hoping to become more informed for his own benefit, and provides no organizational or executive branch indication of concerns, and certainly not dissent, regarding the decision.[4] BLM was able to quickly address what in most instances were simply requests for confirmation, *e.g.*, of the basis for determining the 2021 leases were unlawfully issued, that BLM is "all clear on the next [2024] sale," and that DOI advised the White House before announcing the decision. *Id*. at 2.

AIDEA's theories on Exhibit 2 are even more speculative. Because subordinates in BLM did not immediately provide a copy of the lease cancellation decision to a congressional staffer, AIDEA forms the "position that the official rationale for canceling AIDEA's leases, embodied in the Lease Cancellation Decision (which these emails show DOI kept confidential for at least a week after issuing it, and was reluctant to circulate) was a pretext." Mot. 10. But the decision was transmitted to AIDEA via certified mail. *See* AR 5353. The request for a copy of the decision was made on September 6, 2023, the day of the decision, and renewed on Monday, September 11. Ex. 2 at 3-4. The inquiries within the agency do not evince AIDEA's hypothetical subterfuge, but a typical attempt to learn if there is "[a]nything we have here that we can share[.]" *Id*. at 3. In

4 AIDEA's theories are not only speculative, but internally contradictory. The insinuation that OMB harbored concerns about the substance or rollout of the decision is contradicted by Exhibit 4, the President's separate statement expressing support for "[c]anceling all remaining oil and gas leases issued under the previous administration in the Arctic Refuge[.]" Ex. 4 at 2.

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 8

other words, DOI wanted to confirm whether AIDEA had yet received the decision before sharing it more broadly.

Exhibit 3 does not even refer to or concern the lease cancellation decision, but instead discusses the uploading of the already completed Draft SEIS – which is not challenged in this litigation – to EPA for publication and planning for subsequent steps in the NEPA process. AIDEA theorizes that this email reflected agency employees working sloppily "in over drive" and "cut[ting] cooperating agencies out of the loop at the last minute." Mot. 12 (quoting Ex. 3 at 2). But again, AIDEA simply misunderstands what the email actually says. The "over drive" efforts related not to making (or even issuing) the Draft SEIS, but instead the work needed, subsequent to uploading the Draft SEIS to EPA, to release the Draft SEIS to the public for its review and plan a cooperating agency meeting as well as "public meetings/hearings" that occur during the public comment period on a draft EIS. AIDEA seems incredulous that federal employees would work on a holiday, and incorrectly states that the "email reports that it was unusual to receive a request [to conduct work] on Labor Day." Mot. 11. In fact, the email says no such thing and simply notes for the sake of clarity that the request to upload the Draft SEIS to EPA was received and executed on a non-scheduled workday. Contrary to Plaintiff's implication, career staff of the federal government are not categorically exempt from what is for many a familiar occurrence: a professional obligation falling outside of banking hours.

AIDEA remains similarly far afield of any relevant law in arguing that Exhibit 4 belongs in the administrative record. AIDEA asserts, with no legal support, that "the

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 9

views of the Head of the Executive Branch" should be "a proper part of the administrative record" or are somehow "pertinent" to the Court's review. Mot. 12-13. But AIDEA fails again to make the essential showing that the proffered document itself was considered in making the challenged decision, or even reflects materials that were considered in making that decision.

A motion to complete the administrative record cannot be the mechanism to bring Exhibits 1-4 before the Court. Three of the documents did not exist when the decision was made, and the other one does not concern the decision at all. Additionally, they all involve tangential matters like announcing and distributing the decision or the Draft SEIS, and AIDEA offers nothing more than speculative yet conclusory assertions as to their purported relevance to the decision made.

**III. AIDEA Provides No Basis for Taking Judicial Notice**

AIDEA's suggestion that the Court could take judicial notice of certain documents is also misplaced. AIDEA offers no supporting analysis, saying only in passing that the Court can take judicial notice of Exhibit 4 (the President's statement) and Exhibit 5 (the 2020 Stone-Manning declaration). *See* Mot. 13-15.

A court "may judicially notice a fact that is not subject to reasonable dispute" in certain circumstances. Fed. R. Evid. 201(b). But judicial notice does not provide a means of circumventing administrative record review. Judicial notice should be taken "only exceptionally" when the administrative record does not adequately explain the basis for the agency's decision. *Rybachek v. U.S. E.P.A.*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990); *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir.

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 10

2010) (concluding that plaintiffs failed to meet their "heavy burden to show that the additional materials . . . are necessary to adequately review" the agency decisions). Even when warranted, a court may only take judicial notice of a document's existence and contents, but not for the substance of any disputed matters contained therein. *See Ctr. for Env'tl Law & Pol'y v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1010 n.5 (9th Cir. 2011); *Dent v. Holder*, 627 F.3d 365, 371-72 (9th Cir. 2010).

AIDEA's request fails to comport with these principles. It does not ask the Court to merely note the existence of the proffered materials, but to consider their substance. And it goes a step further, claiming, for example, that the 2020 Stone-Manning declaration establishes "unqualified opposition" to oil and gas development in the Arctic Refuge. Mot. 14. So AIDEA not only asks the Court to use judicial notice to consider the substance of the proffered materials, but to rely on those materials to support further factual inferences underlying AIDEA's purely speculative theories. AIDEA presents no defensible basis for using judicial notice in this fashion.

## IV. There is No Basis to Consider the Documents as Extra-Record Material

Since AIDEA has failed to show how any of its proffered Exhibits can be accepted to complete the administrative record or through judicial notice, the Motion turns on whether the Court may properly consider any of them as extra-record evidence. But here too, AIDEA fails to meet its burden.

A reviewing court "may consider extra-record evidence – that is, evidence the agency did not consider in reaching the challenged decision – only in the following circumstances:

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 11

> (1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'"

*Alaska v. U.S. Dep't of the Interior*, No. 3:22-CV-00078-SLG, 2023 WL 2424270, at *3 (D. Alaska Mar. 9, 2023) (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)). "These exceptions are to be narrowly construed[.]" *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). "Moreover, there is ample authority . . . demonstrating that a party seeking to invoke the *Lands Council* exceptions must first show the administrative record is inadequate to effectively review the challenged action." *Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*, No. 3:18-CV-01420-AC, 2019 WL 6977406, at *8 (D. Or. Dec. 20, 2019) (collecting cases); *see also Alaska*, 2023 WL 2424270, at *7 (explaining that supplementation may be appropriate when confining review to the record would frustrate judicial review).

AIDEA fails the threshold requirement of showing why the Court will be unable to address the "pretext claim" on the existing record. AIDEA portrays this claim as "seek[ing] to determine the true rationale for [the lease cancellation] decision" and "requir[ing] a more probing examination of intra-agency communications, and thus a more complete record." Mot. 3. But AIDEA puts the procedural cart before the horse – it suggests that merely hypothesizing some "pretext" related to the decision can justify extra-record review, when instead

"confining review to the agency's stated reasons for decision is presumptively proper" and a court can look beyond the record "only upon a 'strong showing of bad faith or improper behavior." Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Cross-Mot. for Summ. J. 33, ECF No. 52 ("Defs.' Br.") (quoting *Biden v. Texas*, 597 U.S. 785, 811-12 (2022)). The parties have agreed that AIDEA can present two other extra-record pieces of "evidence," cited in the Complaint, but neither demonstrate that purported policy preferences of higher ranking officials overwhelmed the Deputy Secretary's reasoned decision making. *See* Defs.' Br. 35 n.9. And AIDEA fails to rebut the stated reasons for the cancellation decision, including identification of fundamental legal deficiencies in establishing the Program and thus issuing its first leases. *See id*. and 22-29.

AIDEA only proffers Exhibits 5 and 6 as extra-record evidence, and fails to show that they meet any of the exceptions.[5] It is not clear which exception AIDEA seeks to invoke, for it suggests that those materials reflect "pre-set views or bias" of a "senior official" that DOI "should have considered" or, perhaps alternatively, that overlooking such alleged views constitutes failure to consider "all relevant factors." Mot. 15. But these arguments fail to establish a showing of bad faith necessary to meet the fourth exception because it "is hardly improper for an agency head to come into office with policy preferences and ideas." *Dep't of*

---

5 The "extra-record evidence" section of the Motion only addresses Exhibits 5 and 6, but includes a footnote saying, without explanation, that "exceptions authorizing the Court's review of extra-record evidence very likely also apply" to Exhibits 1-3. Mot. 14 n.29.

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 13

*Com. v. New York*, 588 U.S. 752, 783 (2019).

Even if construed in the most favorable light as invoking the first and fourth exceptions, AIDEA's argument is imprecise, if not concerning. It claims that in the declaration Ms. Stone-Manning "expresses her unqualified opposition" and "pre-established views opposing oil and gas development" in the Arctic Refuge. *Id*. at 14-15. But the declaration doesn't convey anyone's personal views on those topics – it conveys an employee's testimony on behalf of the employing organization and its members. *See* Ex. 5 ¶¶ 6-12 (in which NWF is the subject); ¶ 13 ("it is important that NWF oppose activity in the Refuge to give a voice to our members"). And the mere fact that Ms. Stone-Manning advanced positions of her prior employer before entering public service does not suffice under *Lands Council*. AIDEA's thinly built accusations do "not require the [Director's] dignified denial of bias." *United States v. Morgan*, 313 U.S. 409, 421 (1941). Courts "have long presumed that executive agency officials will discharge their duties in good faith." *CTIA-The Wireless Ass'n v. FCC*, 530 F.3d 984, 989 (D.C. Cir. 2008). AIDEA cannot rebut this presumption through "[u]nsubstantiated suspicions and allegations" but rather "proof [that] must be almost irrefragable." *Spezzaferro v. FAA*, 807 F.2d 169, 173 (Fed. Cir. 1986) (internal quotation and citation omitted).

More fundamentally, AIDEA ignores the fact that the BLM Director did not make the lease cancellation decision. Rather, the DOI Deputy Secretary did. *See* AR 5359 (bearing signature by Mr. Beaudreau). AIDEA's argument

misapprehends DOI's organizational structure, where BLM is one of thirteen bureaus/offices overseen by various Assistant Secretaries, and not by the Deputy Secretary directly. *See* Attach. 1 hereto, DOI Organizational Structure, https://www.doi.gov/sites/default/files/u.s.-department-of-the-interior-fy-2022-2026-strategic-plan.pdf at 15 (last visited Aug. 23, 2024). AIDEA relies on nothing more than supposition in implying that the BLM Director improperly influenced the Deputy Secretary's decision, and its argument therefore fails.

AIDEA cites two cases for the proposition that "pre-set views or bias" of "senior officials" satisfies *Lands Council*. Mot. 15 & n.35. Both are unavailing. Certain emails in *National Audubon Society v. U.S. Army Corps of Engineers*, No. 7:17-CV-162-FL, 2018 WL 4760124 (E.D.N.C. Sept. 30, 2018), were considered as extra-record material because they suggested that the agency failed to comply with a specific regulatory provision requiring the agency to independently verify environmental analysis submitted by the project proponent's contractor. *Id*. at *5. In that particular context, the court found it appropriate to consider specific emails that suggested the agency may have improperly treated the contractor as a disinterested third party and thus "support[ed] the requisite 'strong showing'" for submission of extra-record evidence of "bad faith or improper behavior." *Id*. at *4-5. There is neither a comparable regulatory predicate nor evidentiary showing here, but only a vague suggestion of bias.

AIDEA's other case, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006), is similarly wide of the mark. AIDEA claims it involved a

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 15

relevant "conflict of interest" in an Employee Retirement Income Security Act ("ERISA") case because "[j]udicial review under ERISA is analogous to judicial review under the Administrative Procedure Act in many ways." Mot. 15 n.35. Both suggestions are wrong. *Abatie* concerned judicial review of denial of benefits proceedings, and turned on the panel's procedural distinction between questions involving abuse of discretion versus *de novo* review. *Abatie*, 458 F.3d at 969-70. The conflict in *Abatie*, and its progeny, arose from "a disability determination made by the same entity that funded the ERISA plan" who was simultaneously acting "as a fiduciary toward the plan participants[.]" *Mason v. Fed. Express Corp.*, 165 F. Supp. 3d 832, 849-50 (D. Alaska 2016). Neither the context nor analysis of *Abatie* bears any resemblance to this case.

**V. Conclusion**

For the foregoing reasons, the Court should deny the Motion.

Respectfully submitted this 23rd of August 2024.

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s/ Paul A. Turcke*
PAUL A. TURCKE
Trial Attorney, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Defendants*

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 16

Of Counsel:

MIKE GIERYIC
Attorney Advisor
Office of the Regional Solicitor, Alaska Region
U.S. Department of the Interior
4230 University Drive, Suite 300
Anchorage, AK 99508
907-271-1420
mike.gieryic@sol.doi.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2024, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Paul A. Turcke*
Paul A. Turcke

*AIDEA v. U.S. Dep't of the Interior* Case No. 3:24-cv-00051-SLG
DEFS.' RESP. IN OPP'N TO MOT. TO SUPPLEMENT THE ADMIN. RECORD 17