Brook Brisson (AK Bar No. 0905013)
Suzanne Bostrom (AK Bar No. 1011068)
Bridget Psarianos (AK Bar No. 17050025)
Trustees for Alaska
121 W. Fireweed Ln., Ste. 105
Anchorage, AK 99503
Phone: (907) 276-4244
Fax: (907) 276-7110
bbrisson@trustees.org
sbostrom@trustees.org
bpsarianos@trustees.org

*Attorneys for Intervenor-Defendants Gwich'in Steering Committee, et al.*

Karimah Schoenhut (*pro hac vice*)
Sierra Club Environmental Law Program
50 F St., NW 8th Floor
Washington, DC 20001
Phone: (202) 548-4584
Fax: (202) 547-6009
karimah.schoenhut@sierraclub.org

*Attorney for Intervenor-Defendant Sierra Club*

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | Case No. 3:24-cv-00051-SLG |

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG　　　Page 1 of 15

Defendants,

and

GWICH'IN STEERING
COMMITTEE, *et al.*,

Intervenor-Defendants.

**INTERVENOR-DEFENDANTS GWICH'IN STEERING COMMITTEE ET AL.'S RESPONSE IN OPPOSITION TO MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

This case concerns the U.S. Department of the Interior's (Interior) decision to cancel the Alaska Industrial Development and Export Authority's (AIDEA) leases on the Coastal Plain of the Arctic National Wildlife Refuge (i.e., the Cancellation Decision). The Deputy Secretary of the U.S. Department of the Interior, Tommy Beaudreau, (Deputy Secretary Beaudreau) cancelled AIDEA's leases following a review of the Coastal Plain Oil and Gas Leasing Program (Leasing Program), finding that there were multiple significant legal errors. AR5353–59.

Interior filed the administrative record for the Cancellation Decision with the Court on March 5, 2024, ECF No. 31, and on April 12, 2024, ECF No. 47. AIDEA now seeks to add six documents into the administrative record, contending that the documents show that the rationale set forth by Deputy Secretary Beaudreau in his decision to cancel AIDEA's leases was pretextual. Specifically, AIDEA seeks to complete the record with three documents, Exhibits 1–3; to have the Court take judicial notice of one document, Exhibit 4; and to supplement the record with documents under an exception for extra-

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG   Page 2 of 15
Case 3:24-cv-00051-SLG   Document 73   Filed 08/23/24   Page 2 of 15

record evidence for Exhibits 5 and 6. AIDEA fails to clear the high bar for the court to admit any of the documents because none meet the applicable tests for inclusion in the record. Accordingly, this Court should deny AIDEA's motion. *See* Mot. to Suppl. Admin. R., ECF No. 68 [hereinafter "Mot."].

## LEGAL STANDARDS

AIDEA seeks review of the Cancellation Decision under the Administrative Procedure Act (APA). *See* Am. Compl. at 1, ECF No. 11. Its claims are, therefore, resolved on the basis of the administrative record. 5 U.S.C. § 706. The administrative record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "[A]n agency's statement of what is in the record is subject to a presumption of regularity. . . . We must therefore presume that an 'agency properly designated the Administrative Record absent clear evidence to the contrary.'" *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021); *see also Helena Hunters & Anglers Ass'n v. Marten*, 470 F. Supp. 3d 1151, 1166 (D. Mont. 2020).

There are two ways that a party can seek to have additional documents presented to the court: (1) by seeking to complete the agency record with documents that were before the agency but left out of the filed record, or (2) by seeking to supplement the record with extra-record evidence that was not before the agency at the time of its

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG    Page 3 of 15
Case 3:24-cv-00051-SLG    Document 73    Filed 08/23/24    Page 3 of 15

decision. *Bruce v. Azar*, 389 F. Supp. 3d 716, 724 n.5 (N.D. Cal. 2019). Completing the record "add[s] to the volume of the administrative record [] documents the agency considered," while the review of extra-record evidence is "viewing evidence outside of or in addition to the administrative record that was not necessarily considered by the agency." *Pac. Shores Subdivisions, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).

Under the "clear evidence" standard, a party seeking to rebut the presumption of completeness must not only bring additional documents forward, but must also "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Alaska v. Fed. Subsistence Bd.*, 2021 WL 684529, at *1 (D. Alaska May 4, 2021) (quoting *Shark Sports & Enter. LLC v. Fed. Transit Admin.*, 2020 WL 511998 (N.D. Cal. Jan. 31, 2020)).

For motions to supplement the record, there are four exceptions to the general rule that prohibits extra-record evidence:

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (internal quotation marks omitted). "These exceptions are to be narrowly construed, and the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992–93 (9th Cir. 2014). It is a heavy burden for the proponent to prove an exception is met.

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG   Page 4 of 15
Case 3:24-cv-00051-SLG   Document 73   Filed 08/23/24   Page 4 of 15

*Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010); *see also Helena Hunters & Anglers Ass'n v. Marten*, 470 F. Supp. 3d at 1166 (explaining clear evidence standard also applies to supplementing the record).

Specific to AIDEA's arguments in its motion, the "relevant factors" exception for supplementing the record "only applies when Federal Defendants fail to consider a general subject matter that is demonstrably relevant to the outcome of the agency's decision, not when specific hypotheses and/or conclusions are omitted from consideration." *Ctr. for Biological Diversity v. Bernhardt*, 595 F. Supp. 3d 890, 903 (D. Ariz. 2022), *rev'd and remanded on other grounds*, 87 F.4th 980 (9th Cir. 2023). To that end, the document must be more than just relevant or raise a particular issue; "it must point out an entirely new general subject matter that the defendant agency failed to consider." *Id*. (quotation omitted).

Regarding the standards for judicial notice, Federal Rule of Evidence 201(b) allows a court to take judicial notice of facts "not subject to reasonable dispute." However, judicial notice cannot be used to get around record review; documents offered for judicial notice must still meet an exception to the record rule to be considered as extra-record evidence. *Rybachek v. United States*, 904 F.2d 1276, 1296 (9th Cir. 1990); *All. for the Wild Rockies v. Probert*, 412 F. Supp. 3d 1188, 1198 (D. Mont. 2019).

Even where, as here, a moving party seeks to add documents to show an agency decision was pretextual, the validity of the agency's decision is still generally judged on the administrative record. *Dep't of Commerce v. New York*, 588 U.S. 752, 780 (2019). This is because courts recognize that agency decisions are often informed by political

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG     Page 5 of 15
Case 3:24-cv-00051-SLG    Document 73    Filed 08/23/24    Page 5 of 15

considerations and priorities, and this is not per se improper. *Id.* at 781. As a result, a party must put forward a "strong showing of bad faith or improper behavior" based on the present administrative record to be able to delve into the "mental processes of the administrative decisionmakers" via extra-record evidence. *Id.* (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)).

ARGUMENT

AIDEA's motion seeking to complete or supplement the record with its proffered documents should be denied because AIDEA cannot meet its heavy burden to show that the documents belong in the record under any theory.

As a preliminary matter, AIDEA states that the absence of internal-agency communications aside from documents or communications from the Office of Solicitor of the U.S. Department of the Interior (Solicitor) is "striking" and implies that this indicates "[t]he omission of internal correspondence and evaluative documents" from the record. Mot. at 2–3. AIDEA's implication that such additional documents exist is based on speculation, rather than the "clear evidence" required to overcome the presumption of regularity. *Goffney*, 995 F.3d at 748 (noting decision turned on legal rather than factual issues in rejecting speculation that the agency "must have considered more documents than it said it had"). Indeed, because the Cancellation Decision turned on the identification of legal errors tainting the Leasing Program, it is unsurprising that the internal communications regarding the decision would only include privileged legal advice from the Solicitor. Certified List of the Contents of the Admin. R. at 3, ECF No. 31-2. As discussed below, none of the exhibits offered by AIDEA provides clear

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG                Page 6 of 15
Case 3:24-cv-00051-SLG    Document 73    Filed 08/23/24    Page 6 of 15

evidence, or indeed any evidence, that Interior omitted communications or documents from the administrative record such that its offered documents are necessary to complete the record.[1] Nor has AIDEA met the burden to demonstrate that any exception allowing supplementation applies, much less a showing of bad faith.

I. **AIDEA HAS NOT SATISFIED THE TEST TO COMPLETE THE RECORD WITH THE AGENCY EMAILS IN EXHIBITS 1 THROUGH 3.**

AIDEA first offers three emails that it contends are necessary to complete the record. These emails show only that agency officials subordinate to Deputy Secretary Beaudreau were involved in explaining or sharing the Cancellation Decision after it had been finalized, and that the Director of the U.S. Bureau of Land Management (BLM Director) was involved in the timing for publication of the draft supplemental environmental impact statement (draft SEIS) for the leasing program. Exhibit 1 is an email string among and between Interior officials and the Office of Management and Budget (OMB), an agency within the White House, asking questions following the announcement of the Cancellation Decision. Mot. at 7; Ex. 1, ECF No. 68-2. Exhibit 2 is an email string among and between Interior officials and congressional staff asking for a copy of the Cancellation Decision. Mot. at 9; Ex. 2, ECF No. 68-3. Exhibit 3 is an email from a U.S. Fish and Wildlife Service employee to other agency staff explaining that the

---

[1] AIDEA offers three emails that it argues will complete the record. It does not clearly offer these emails as evidence that additional documents were omitted or clearly ask the Court to order Interior to complete the record with other intra-agency documents other than the three presented with its motion. To the extent that AIDEA impliedly raises the argument that there are additional communications beyond what it has offered, that argument should be rejected as discussed below. *See infra* Argument Part I.

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG    Page 7 of 15
Case 3:24-cv-00051-SLG   Document 73   Filed 08/23/24   Page 7 of 15

BLM Director directed the agency to upload the completed draft SEIS for publication. Mot. at 11; Ex. 3, ECF No. 68-4.

As a threshold matter, Exhibits 1 and 2 are not properly part of the record because they post-date the Cancellation Decision. The motion as it relates to these documents should be denied on that basis alone. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602–03 (9th Cir. 2014) (stating "post-decision information . . . may not be advanced as a new rationalization either for sustaining or attacking an agency's decision" (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450, (9th Cir. 1996))). AIDEA acknowledges that the documents are post-decisional. Mot. at 7, 9. AIDEA offers no argument as to how post-decisional documents were considered by Deputy Secretary Beaudreau or subordinates while making the decision and properly part of the record. They are not.

AIDEA argues that Exhibit 1 should be added to the record because it shows that the BLM Director took part in the Lease Cancellation decision and that the document shows "internal dissent." Mot. at 8–9; Ex. 1. On its face, the email only shows that the BLM Director was involved in responding to questions about lease cancellation after the decision was finalized. Ex. 1. While the document may show that the BLM Director fielded questions after the Cancellation Decision, it does not indicate that she, or other subordinates, were involved in making the decision itself. It, therefore, fails to provide clear evidence that the document, or any additional documents, were considered by Deputy Secretary Beaudreau but omitted from the record, which is the standard AIDEA must meet. *See supra* Legal Standards. *Contra* Mot. at 6. Further, it is unremarkable that

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG    Page 8 of 15
Case 3:24-cv-00051-SLG   Document 73   Filed 08/23/24   Page 8 of 15

the BLM Director was involved in explaining Deputy Secretary Beaudreau's decision about the Leasing Program given the directive in the Tax Cuts and Jobs Act (Tax Act) for the Bureau of Land Management (BLM) to manage the Leasing Program. Tax Cuts and Jobs Act § 20001, Pub. L. 115-97, 131 Stat. 2054, 2235–37 (2017).

To the extent that AIDEA argues that the email string shows that the BLM Director was involved when she should have recused herself, AIDEA has not brought a claim on those grounds. *See* Mot at 9. AIDEA's argument that Exhibit 1 demonstrates there was "internal dissent" is pure conjecture. At most, the emails show that OMB had questions for Interior following issuance of the Cancellation Decision. Exhibit 1 does not indicate that OMB officials disagreed with the decision or that Interior ignored any relevant internal agency dissent before the Deputy Secretary issued the Cancellation Decision. *Contra* Mot. at 9. In short, none of AIDEA's points are relevant to the question of whether the proffered document was before the agency at the time it made its decision. Nor does the post-decisional document provide clear evidence that additional pre-decisional documents exist but were omitted from the record. As such, AIDEA has not met its burden to complete the record with this email. *See supra* Legal Standards.

Turning to Exhibit 2, AIDEA asserts that this post-decisional email string regarding distribution of the Cancellation Decision raises questions about the extent to which the Cancellation Decision was made public, claiming that this issue is part of the decision itself. Mot. at 10–11. AIDEA presents no legal support for its argument. When and how a decision document is shared publicly after the fact does not demonstrate that the emails discussing distribution were considered by the agency prior to making the

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG　　　　Page 9 of 15
Case 3:24-cv-00051-SLG　　Document 73　　Filed 08/23/24　　Page 9 of 15

decision nor provide clear evidence that Interior omitted additional documents from the administrative record. AIDEA has failed to show that this document is properly part of the record. *See supra* Legal Standards.

Exhibit 3, an email regarding the publication of the draft SEIS, is the only document in this group pre-dating BLM's decision. But it too fails to meet the clear evidence standard for inclusion in the record because there is no reason to believe that Deputy Secretary Beaudreau considered this logistical email in making the Cancellation Decision. According to AIDEA, this email demonstrates that: (1) the BLM Director was involved in the release of the draft SEIS, and (2) the direction to upload the completed draft SEIS for publication means the quality of that document is questionable. Mot. at 12. Again, the fact that the BLM Director was involved in the release of the draft SEIS is unremarkable given that BLM is tasked with managing the Leasing Program under the Tax Act. Tax Act § 20001. The fact that Interior relied on the information developed during the draft SEIS process in reaching the Cancellation Decision is not in dispute; Interior said as much in the Cancellation Decision. AR5358. To the extent AIDEA argues that the rush to publish the draft SEIS means that the analysis in the Cancellation Decision is flawed, AIDEA is already challenging that justification in this case based on the existing record. *See generally* Pls.' Opening Br. on Counts I, II(A), III, IV, and V, ECF No. 50; Pl. AIDEA's Reply Brief on Counts I, II(A), III, IV, and V, ECF No. 65. Like the two prior exhibits, AIDEA points to nothing in Exhibit 3 to meet the clear evidence standard showing that the Deputy Secretary directly or indirectly relied on it

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG    Page 10 of 15
Case 3:24-cv-00051-SLG    Document 73    Filed 08/23/24    Page 10 of 15

when making the Cancellation Decision or that Interior omitted additional documents from the record submitted to the court. *See supra* Legal Standards.

## II. AIDEA HAS NOT SATISFIED THE TEST TO HAVE THE COURT TAKE JUDICIAL NOTICE OF THE PRESIDENT'S PRESS RELEASE IN EXHIBIT 4.

Exhibit 4 is a press release issued by the President explaining the administration's actions to cancel AIDEA's leases in the Arctic Refuge and begin a regulatory process for the Western Arctic related to the National Petroleum Reserve–Alaska. Mot. at 12–13; Ex. 4, ECF No. 68-5. AIDEA cannot meet the test to have the Court take judicial notice of this document because it is post-decisional, there is no indication Deputy Secretary Beaudreau relied on it, and it does not satisfy any exception to the record rule. *See supra* Legal Standards. AIDEA implies that it is improper for the President, as the head of the executive branch, to know about or engage in agency decisions ahead of time. Mot. at 13. This is simply how the government works: the executive agencies carry out the policies of the President, consistent with the law. That alone does not show bad faith and, therefore, cannot support supplementation of the record. *See supra* Legal Standards. Regardless of whether the press release shows the President was aware of or supported the Cancellation Decision, this is a post-decisional document that does not satisfy the bad faith exception or any other exception to the record rule. *See, e.g., Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, 2019 WL 1976475, at *3 (D. Alaska Jan. 10, 2019) (holding press release is not part of the administrative record because it was post decisional and "did not form the basis for the Secretary's decision"). In short, AIDEA has not carried its burden to show that the court should take judicial notice of this document.

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG    Page 11 of 15
Case 3:24-cv-00051-SLG   Document 73   Filed 08/23/24   Page 11 of 15

### III. AIDEA HAS NOT SATISFIED THE TEST TO SUPPLEMENT THE RECORD WITH DOCUMENTS RELATING TO THE BLM DIRECTOR'S PRIOR EMPLOYMENT IN EXHIBITS 5 AND 6.

AIDEA next offers two documents specific to the BLM Director's prior employment. Exhibit 5 is a declaration that BLM Director Tracy Stone-Manning submitted to this court, while previously employed by the National Wildlife Federation, explaining the position of that organization and its work to protect the Coastal Plain. Exhibit 6 is a press release in which Stone-Manning is quoted representing the views of her prior employer. AIDEA asserts that the documents should be admitted as extra-record evidence under the "relevant factors" exception, asserting that the "relevant factor" is whether Interior considered if its decision-makers have bias. Mot. at 15–16.

AIDEA appears to be attempting to sidestep the requirement to show clear evidence of bad faith by shoehorning its argument into the "relevant factors" exception. Yet AIDEA fails to show that the purported bias of BLM Director Stone-Manning was relevant to the decision. AIDEA has not brought a claim that the BLM Director improperly failed to recuse herself from decisions regarding the Leasing Program. Further, BLM Director Stone-Manning's prior employment was well-known at the time of her U.S. Senate confirmation. Ex. 1, Statement of Tracy Stone-Manning at 2 (June 8, 2021), *available at* https://www.energy.senate.gov/hearings/2021/6/nominations-hearing. Regardless of her prior employment, BLM Director Stone-Manning is presumed to act in good faith in discharge of her official duties. *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1288 (Fed. Cir. 2010) (explaining "government officials are presumed to act in good faith" in discharge of their duties); *see also Juliet Constr., LLC v. United States*,

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG  Page 12 of 15
Case 3:24-cv-00051-SLG   Document 73   Filed 08/23/24   Page 12 of 15

2019 WL 1400178, at *10 (Mar. 19, 2019) (same). AIDEA fails to explain why consideration of the declaration and press statement were necessary to ensure that Interior considered all relevant factors in making its decision. *See supra* Legal Standards.

Importantly, neither of the proffered documents suggest that Stone-Manning acted in a manner inconsistent with her official duties as the BLM Directory in carrying out the Tax Act or unethically in relation to the Cancellation Decision. *See, e.g.*, *Fence Creek Cattle Co.*, 602 F.3d at 1131 (denying motion to take judicial notice of grazing permits to show malfeasance by the agency, because the extra-record documents did not show bad faith and were not necessary to review the decision at issue).[2] And as discussed above, the other exhibits that AIDEA proffers fail to show that BLM Director Stone-Manning was directly involved in making the Cancellation Decision or that additional documents were omitted from the record. *See supra* Argument Parts I & II; Exs. 1–4. Thus, AIDEA's argument regarding the failure to consider BLM Director Stone-Manning's purported bias is premised on speculation she contributed to making the Cancellation Decision. AIDEA has, therefore, failed to provide clear evidence that supplementation is justified under the "relevant factors" exception. Moreover, AIDEA has failed to make the

---

[2] AIDEA's reliance on *National Audubon Society v. U.S. Army Corps of Engineers*, 2018 WL 4760124, at *4 (E.D.N.C. Sept. 30, 2018), is unavailing. There, the court allowed the inclusion of emails into the record that were directly relevant to whether the agency had complied with a regulation to independently evaluate the work of third parties during the agency's permitting process. Here, the declaration and press statement show only Stone-Manning's representation of the position of her prior employer; they do not show any improper behavior in the context of the Lease Cancellation decision or her BLM duties.

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG        Page 13 of 15
Case 3:24-cv-00051-SLG   Document 73   Filed 08/23/24   Page 13 of 15

showing of bad faith required to justify admitting either Exhibit 5 or 6 as extra-record documents. *See supra* Legal Standards.

CONCLUSION

For the foregoing reasons, the Court should deny AIDEA's Motion to Supplement the Administrative Record.

Respectfully submitted this 23rd day of August, 2024.

    s/ Brook Brisson
Brook Brisson (AK Bar No. 0905013)
Suzanne Bostrom (AK Bar No. 1011068)
Bridget Psarianos (AK Bar. No 1705025)
TRUSTEES FOR ALASKA

*Attorneys for Intervenor-Defendants Gwich'in Steering Committee, et al.*

s/ Karimah Schoenhut (consent)
Karimah Schoenhut (*pro hac vice*)
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM

*Attorney for Intervenor-Defendant Sierra Club*

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG    Page 14 of 15
Case 3:24-cv-00051-SLG   Document 73   Filed 08/23/24   Page 14 of 15

**CERTIFICATE OF SERVICE**

I certify that on August 23, 2024, I caused a copy of the GWICH'IN STEERING COMMITTEE ET AL.'S RESPONSE IN OPPOSITION TO MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system.

    s/ Brook Brisson
Brook Brisson

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.4(a)(3), I certify that this motion complies with the type-volume limitation of Local Civil rule 7.4(a)(1) because it contains 3,450 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4).

    s/ Brook Brisson
Brook Brisson

Gwich'in Steering Committee, et al.'s Resp. in Opp'n to Mot. to Supp. Admin. R
*AIDEA v. U.S. Dep't of the Interior*, Case No. 3:24-cv-00051-SLG     Page 15 of 15
Case 3:24-cv-00051-SLG    Document 73    Filed 08/23/24    Page 15 of 15