Brook Brisson (AK Bar No. 0905013)
Suzanne Bostrom (AK Bar No. 1011068)
Bridget Psarianos (AK Bar No. 1705025)
TRUSTEES FOR ALASKA
121 W Fireweed Lane, Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
Fax: (907) 276-7110
bbrisson@trustees.org
sbostrom@trustees.org
bpsarianos@trustees.org

*Attorneys for Intervenor-Defendants Gwich'in Steering Committee, et al.*

Karimah Schoenhut (*pro hac vice*)
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
50 F St., NW 8th Floor
Washington, DC 20001
Phone: (202) 548-4584
Fax: (202) 547-6009
karimah.schoenhut@sierraclub.org

*Attorney for Intervenor-Defendant Sierra Club*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY, | Case No. 3:24-cv-00051-SLG |
| Plaintiff, | |
| v. | |
| U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | |

Defendants,

and

GWICH'IN STEERING
COMMITTEE, *et al*.,

Intervenor-Defendants.

**INTERVENOR-DEFENDANTS GWICH'IN STEERING COMMITTEE ET AL.'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON COUNT
II(B) AND MOTION FOR SUMMARY JUDGMENT ON COUNT II(B)**

(Fed. R. Civ. P. 56(a), Local Civ. R. 16.3, Order Re Joint Mot. Regarding Scheduling
Order, ECF No. 49)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

LIST OF SHORT NAMES AND ACRONYMS ................................................ v

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND ........................................................................... 2

LEGAL STANDARDS .................................................................................... 4

ARGUMENT .................................................................................................... 6

CONCLUSION ................................................................................................ 16

CERTIFICATE OF SERVICE ....................................................................... 18

CERTIFICATE OF COMPLIANCE .............................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*AIDEA v. Biden*, 685 F. Supp. 3d 813 (D. Alaska 2023) ...................................... 12, 14, 15

*Alaska v. Haaland*, 143 S. Ct. 1002, 215 L. Ed. 2d 137 (2023) ................................ 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 6

*Biden v. Texas*, 597 U.S. 785 (2022) ................................................................. 5, 6

*Boesche v. Udall*, 373 U.S. 472 (1963). .............................................................. 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................... 5

*Center for Biological Diversity v. Bernhardt*, 982 F.3d 723 (9th Cir. 2020) ............. 14, 15

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ................... 5

*Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States*, 32 F.4th 1130 (2022) ............................................................... 13

*Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535 (D.D.C. 2021) ................... 13, 14

*Dep't of Commerce v. New York*, 588 U.S. 752 (2019). ...........................................passim

*Gwich'in Steering Comm. v. Haaland*, Case No. 3:20-cv-00204-SLG (Alaska D. Ct.) .............................................................................. 12

*James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996) ................. 5, 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................. 11

*Nat'l Audubon Soc'y v. Haaland*, Case No. 3:20-cv-00205-SLG (Alaska D. Ct.) ........... 12

*Native Vill. of Venetie Tribal Gov't v. Haaland*, Case No. 3:20-cv-00223-SLG (Alaska D. Ct.) .............................................................................. 12

*Nelson v. Pima Cmty. College*, 83 F.3d 1075 (9th Cir. 1996) .................................. 6

*Safari Club Int'l v. Haaland*, 31 F.4th 1157 (9th Cir. 2022) .................................. 6

*Scott v. Harris*, 550 U.S. 372 (2007) ................................................................ 11

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page iii

Case 3:24-cv-00051-SLG   Document 75   Filed 08/30/24   Page 4 of 24

*State of Wash. v. Haaland*, Case No. 3:20-cv-00224-SLG (Alaska D. Ct.)......................12

*Voyageur Outward Bound Sch. v. United States*, 2021 U.S. WL 1929123
  (D.D.C. May 13, 2021).................................................................................13

## <u>Rules</u>

Fed. R. Civ. P. 56(a).........................................................................................5

Fed. R. Civ. P. 56(c).........................................................................................6

Fed. R. Civ. P. 56(e).........................................................................................6

## LIST OF SHORT NAMES AND ACRONYMS

| | |
|---|---|
| AIDEA | Alaska Industrial Development and Export Authority |
| APA | Administrative Procedure Act |
| Arctic Refuge | Arctic National Wildlife Refuge |
| Assistant Secretary | Principal Deputy Assistant Secretary of Land and Minerals Management |
| Deputy Secretary | Deputy Secretary of the U.S. Department of the Interior |
| DOJ | U.S. Department of Justice |
| EIS | Environmental Impact Statement |
| Interior | U.S. Department of the Interior |
| Leasing Program | Coastal Plain Oil and Gas Leasing Program |
| NEPA | National Environmental Policy Act |
| Secretary | Secretary of the U.S. Department of the Interior |
| Secretary of Commerce | Secretary of the U.S. Department of the Commerce |
| SEIS | Supplemental Environmental Impact Statement |
| Tax Act | Tax Cuts and Jobs Act |

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page v

Case 3:24-cv-00051-SLG   Document 75   Filed 08/30/24   Page 6 of 24

## INTRODUCTION

After concluding that there were multiple, serious legal errors with the Coastal Plain Oil and Gas Leasing Program (Leasing Program), the Deputy Secretary of the U.S. Department of the Interior (Deputy Secretary) lawfully cancelled the Alaska Industrial Development and Export Authority's (AIDEA) leases on the Coastal Plain of the Arctic National Wildlife Refuge (Arctic Refuge). AIDEA claims that the stated reason for lease cancellation — the significant legal errors with the Leasing Program — was pretextual and that the true reason was that the U.S. Department of the Interior (Interior) wants to prohibit all oil and gas activities on the Coastal Plain.[1] AIDEA asks the Court to withhold entering summary judgment for Defendants, and instead to allow AIDEA to engage in extra-record discovery and potentially go to trial on that claim.[2]

AIDEA's arguments fail. Interior relied on valid reasons to cancel AIDEA's leases that it detailed in its decision.[3] The Deputy Secretary's findings regarding these legal violations are supported by the record and consistent with the Tax Cuts and Jobs Act

---

[1] *See generally* Pl. AIDEA's Opening Br. on Count II(B) and Opp'n to DOI's Mot. for Summ. J. on Count II(B) at 2, ECF No. 66 [hereinafter "AIDEA Pretext Br."].

[2] AIDEA Pretext Br. at 3, 13–14. This is at odds with AIDEA's previous position that the Court could rule on all claims in one order and that it was in all parties' best interest for the Court to do so by October 25, 2024. *See* J. Mot. Regarding Scheduling Order at 2, 4, ECF No. 48.

[3] AR5358–59.

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 1

(Tax Act).[4] Critically, AIDEA offers no evidence to show that Interior's rationale that it was addressing legal errors with the Leasing Program was a sham, which it must do to withstand summary judgment on its pretext claim. In the absence of actual evidence of bad faith, Interior's reliance on valid legal reasons to cancel the leases ends the inquiry. Accordingly, this Court should reject AIDEA's request to suspend review of this claim and allow for discovery, grant Defendants' and Intervenor-Defendants' motions for summary judgment, and enter judgment in favor of Defendants and Intervenor-Defendants Gwich'in Steering Committee et al. (collectively "Gwich'in Steering Committee") and the Arctic Village and Venetie Tribes on Count II(B).

## FACTUAL BACKGROUND

The Gwich'in Steering Committee recounted the background of this case in its prior response to AIDEA's motion for summary judgment on the majority of its claims.[5] A summary of the facts relevant to this specific claim follows.

In September 2023, the Deputy Secretary issued a decision cancelling AIDEA's leases (Cancellation Decision).[6] This decision came over two years after Interior first notified AIDEA that it had identified legal errors with the Leasing Program and was

---

[4] *See generally* Intervenor-Defs. Gwich'in Steering Comm. et al.'s Resp. in Opp'n to Mot. for Summ. J. and Cross Mot. for Summ. J. on Counts I, II(A), III, IV, and V, ECF No. 53 [hereinafter "Response Br."].

[5] Response Br. at 12–18.

[6] AR5353–59.

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 2

considering cancelling AIDEA's leases.[7] In his Cancellation Decision, the Deputy Secretary expressly recognized the Secretary of the U.S. Department of the Interior's (Secretary) inherent authority to cancel leases that were invalidly issued and to correct legal errors.[8] The Deputy Secretary explained that Interior "determined that the leases were improperly issued due to pre-leasing legal defects."[9] He specified that his decision to cancel AIDEA's leases was based on Interior's findings regarding the agency's prior unlawful interpretation of the Tax Act's 2,000-acre limitation on surface disturbance and the analysis of greenhouse gas emissions.[10]

The Deputy Secretary found that the legal errors with the Leasing Program "were sufficiently serious and fundamental to the decision-making process" to warrant cancellation.[11] He explained that the failure to properly interpret the Tax Act was consequential, given that the purposes of the Arctic Refuge include protecting wildlife and ensuring continued subsistence.[12] The Deputy Secretary also noted the importance of evaluating a reasonable range of alternatives to meet the National Environmental Policy Act's (NEPA) mandates.[13] He then explained that information developed while preparing the draft supplemental environmental impact statement (SEIS) supported cancelling the

---

[7] AR3362–63, AR3364–65, AR3404.
[8] AR5355, AR5359.
[9] AR5353; *see also* AR5359.
[10] AR5356–58.
[11] AR5358–59.
[12] AR5357.
[13] AR5356–57.

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 3

Case 3:24-cv-00051-SLG    Document 75    Filed 08/30/24    Page 9 of 24

leases at that time.[14] The Deputy Secretary identified that cancelling the leases before finalizing the Leasing Program would allow the agency to consider what areas to offer for lease in the second lease sale, including areas that AIDEA had leased.[15]

In its announcement of the decision, Interior directly referred to the legal review undertaken and the identified legal errors justifying lease cancellation.[16] The legal deficiencies identified by Interior include the same ones that Interior had previously identified as supporting lease suspension — i.e. "insufficient analysis under [NEPA], including failure to adequately analyze a reasonable range of alternatives and properly quantify downstream greenhouse gas emissions; and failure to properly interpret the Tax Act."[17]

## LEGAL STANDARDS

The Gwich'in Steering Committee previously set out the applicable standard of review under the Administrative Procedure Act (APA).[18] Relevant to this claim, the Supreme Court in *Department of Commerce v. New York* explained how courts approach claims of pretext and affirmed that agency decisions are reviewed based on the administrative record.[19] The Court recognized that agency decisions are often driven by

---

[14] AR5358.
[15] AR5358.
[16] AR5361.
[17] AR5361.
[18] Response Br. at 18–19.
[19] 588 U.S. 752, 780 (2019).

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 4

Case 3:24-cv-00051-SLG   Document 75   Filed 08/30/24   Page 10 of 24

political considerations and that such considerations are not necessarily a reason to overturn a decision: "[A] court may not reject an agency's stated reasons for acting simply because the agency might also have other unstated reasons."[20] As a result, courts reviewing agency decisions under the APA consider only the "agency's contemporaneous explanation in light of the existing administrative record."[21] The Court articulated a "narrow exception to the general rule against inquiring into 'the mental processes of administrative decisionmakers.'"[22] To be able to deviate from the agency's administrative record requires a "strong showing of bad faith or improper behavior."[23] Further, to avoid summary judgment on its claim, AIDEA must show that there is a genuine issue of material fact as to whether Interior acted in bad faith.[24] AIDEA's efforts to resist

---

[20] *Id.* at 781.

[21] *Id.* at 780.

[22] *Id.* at 781 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

[23] *Id.* (quoting *Overton Park*, 401 U.S. at 420); *see also Biden v. Texas*, 597 U.S. 785, 811–12 (2022) (explaining that review of an agency decision only goes beyond the agency's record when there has been a "strong showing of bad faith or improper behavior" and rejecting argument that agency policy objective overcomes stated reasons). *Contra* AIDEA Pretext Br. at 12 (arguing that a pretext claimant need not make a strong showing of bad faith).

[24] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325–28 (1986) (explaining that if an opposing party will have the burden of proof on an issue, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case"); *see also James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096–97 (D.C. Cir. 1996); Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Cross-Mot. for Summ. J. at 21 [hereinafter "Interior Br."] (setting out standard).

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG       Page 5

Case 3:24-cv-00051-SLG   Document 75   Filed 08/30/24   Page 11 of 24

summary judgment must be supported by evidence.[25] While courts view the offered evidence in the light most favorable to the non-moving party, courts cannot not draw unreasonable inferences from such evidence or rely on non-existent evidence to forego entering summary judgment.[26]

## <u>ARGUMENT</u>

AIDEA cannot withstand summary judgment on its pretext claim because the Secretary relied on valid reasons to cancel the leases — to address pre-leasing legal errors in the Leasing Program — and AIDEA points to no evidence to show that Interior manufactured a sham rationale for the cancellation. More than two years prior to the Cancellation Decision, the President and Secretary directed review of legal issues concerning the Leasing Program. As a result of the Secretary's review of the Leasing Program and development of the draft SEIS, Interior determined that the Leasing Program contained multiple, serious legal errors warranting lease cancellation.[27] The Deputy Secretary relied on the Secretary's inherent authority, recognized decades ago by the Supreme Court in *Boesche v. Udall*,[28] to cancel the leases to correct pre-leasing legal

---

[25] Fed. R. Civ. P. 56(c), (e); *Biden v. Texas*, 597 U.S. at 812–13; *Safari Club Int'l v. Haaland*, 31 F.4th 1157, 1177 (9th Cir. 2022), *cert. denied sub nom. Alaska v. Haaland*, 143 S. Ct. 1002, 215 L. Ed. 2d 137 (2023); *see also Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–51 (1986); *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d at 1096.

[27] AR5353, AR5358–59.

[28] 373 U.S. 472 (1963).

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 6

errors.[29] Despite this well-established authority and Interior's consistently explained actions regarding the Leasing Program, AIDEA argues that the Deputy Secretary's contemporaneous explanation for cancelling the leases was pretextual. This claim fails because AIDEA points to no evidence that Interior concocted its justification of addressing the legal errors with the Leasing Program with other goals in mind, such that it was pretextual. The Deputy Secretary articulated a legitimate basis for his action and identified substantial legal errors. AIDEA's arguments do not overcome Interior's contemporaneous explanation in the Cancellation Decision, which is supported by the record.

As evidence of that alleged pretext, AIDEA first points to a post-decisional press statement from Secretary Haaland in which she stated, "[w]ith today's action no one will have rights to drill oil in one of the most sensitive landscapes on Earth."[30] As Interior explained, this statement describes the immediate effects of the Cancellation Decision, rather than expressing the agency's reason for the cancellation.[31] AIDEA asserts that the Secretary's statement demonstrates the pretextual basis for the Cancellation Decision because it did not mention any resumption of the Leasing Program or point to any legal errors.[32] These arguments are contradicted by the record. In its announcement of the

---

[29] AR5355, AR5359.
[30] AIDEA Pretext Br. at 5 (quoting the Secretary's statement).
[31] Interior Br. at 35 n.9.
[32] AIDEA Pretext Br. at 6.

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 7

decision, Interior directly referred to the legal review it undertook and the identified legal errors justifying lease cancellation.[33] Interior explained that the SEIS process led to the development of information about the legal flaws: "The draft supplemental environmental impact statement [] released today . . . developed information supporting the Department's determination that the 2021 lease sale was seriously flawed and based on a number of fundamental legal deficiencies."[34] The legal deficiencies identified by Interior include "insufficient analysis under [NEPA], including failure to adequately analyze a reasonable range of alternatives and properly quantify downstream greenhouse gas emissions; and failure to properly interpret the Tax Act."[35] AIDEA's argument that Interior simply wished to stop all oil and gas activities also ignores the fact that Interior has continued to take steps to implement the Leasing Program. Indeed, concurrent with the Cancellation Decision, Interior issued the draft SEIS for the Leasing Program, moving toward a revised Leasing Program.[36] Interior has also consistently stated its intention to hold a lease sale this year.[37]

AIDEA's other proffered extra-record documents and additional citations fail to provide evidence that Interior's decision was pretextual. AIDEA relies on a statement from then–presidential candidate Joseph Biden, as well as various documents that it

---

[33] AR5361.
[34] AR5361.
[35] AR5361.
[36] AR5363–64.
[37] Interior Br. at 9, 49; J. Mot. Regarding Scheduling Order at 1–2, ECF No. 48.

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 8

argues show bias on the part of agency officials.[38] Nothing in these documents demonstrates that the Deputy Secretary manufactured the rationale about the legal errors in the Leasing Program as a sham, nor do the documents support a reasonable inference to that effect. AIDEA's argument turns solely on speculation; it is not based on evidence of bad faith, which it must proffer to withstand summary judgment.[39]

AIDEA relies on *Department of Commerce v. New York* to argue that it has met its burden to show that the decision was pretextual.[40] But the present case is factually distinguishable from *Department of Commerce*, and the record here does not support AIDEA's position. *Department of Commerce* concerned the inclusion of a citizenship question in the census. The Secretary of the U.S. Department of Commerce's (Secretary of Commerce) stated reason for including the question was that the U.S. Department of Justice (DOJ) had requested the question be included to provide data to evaluate Voting Rights Act compliance.[41] But a memorandum in the record showed that the Secretary of Commerce had been considering adding the citizenship question long before DOJ requested it, that the Secretary of Commerce had contacted other agencies about

---

[38] AIDEA Pretext Br. at 6–10.
[39] *See supra* Legal Standards. As the Gwich'in Steering Committee explained in its response to the Motion to Supplement the Administrative Record, AIDEA's offered documents do not show that Interior's reasons for cancelling its leases were illegitimate nor demonstrate any bad faith on the part of Interior in carrying out the Leasing Program such that the Court should complete the record with additional documents or consider extra-record documents. Resp. to Mot. to Supp. Admin. R. at 6–14, ECF No. 73.
[40] AIDEA Pretext Br. at 12–13.
[41] 588 U.S. at 761–62.

---

including the question, and had then prompted DOJ to ask the Department of Commerce to rely on the Voting Rights Act justification in a request to include the question.[42] Based on the inclusion of that memorandum in the record, the District Court granted a motion to complete the record and also allowed the plaintiffs to conduct extra-record discovery to support their argument that the inclusion of the question was pretextual.[43] The District Court ultimately held, based on all of the evidence, that the rationale for including the question was pretextual and vacated the decision.[44]

The U.S. Supreme Court held the District Court's decision to allow discovery of extra-record evidence based on the memorandum was premature, but considered the extra-record evidence nonetheless because the documents provided in response to the District Court's order to complete the record showed that the Voting Rights Act compliance rationale played only an "insignificant role in the decisionmaking process."[45] The records submitted to complete the administrative record, therefore, provided the "strong showing" of bad faith required to allow extra-record discovery and consideration of extra-record evidence.[46]

---

[42] *Id.* at 781–82.
[43] *Id.* at 782.
[44] *Id.* at 765–66.
[45] *Id.* at 782.
[46] *Id. Contra* AIDEA Pretext Br. at 12 (arguing that a pretext claimant need not make a strong showing of bad faith).

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 10

Considering all the evidence, including the extra-record evidence, the Supreme Court concluded there was a "significant mismatch between the decision the Secretary made and the rationale he provided."[47] Central to the Supreme Court's reasoning that the Voting Rights Act compliance justification was "contrived" were the following facts: the Secretary of Commerce had been considering asking the question soon after the election, the rationale that the question would help DOJ with Voting Rights Act enforcement was developed long after the Secretary of Commerce had decided to include the question and had asked other agencies to request it, and DOJ's reaction to offers of other ways to meet its data needs demonstrated that DOJ was not actually interested in the data.[48] In short, the record rationale was a sham reason disconnected from the actual reasons for the decision. The Supreme Court thus upheld the District Court's ruling that the rationale for including the citizenship question was pretextual.[49]

The facts in this case are very different. AIDEA points to nothing in the record indicating that the stated goals of the President, Secretary, and Deputy Secretary to address legal violations with the Leasing Program were "contrived." On the contrary, the record demonstrates a persistent concern with correcting the legal errors.[50] Indeed, the

---

[47] 588 U.S. at 783.

[48] *Id.* at 784.

[49] *Id.*

[50] *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986))).

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 11

Case 3:24-cv-00051-SLG   Document 75   Filed 08/30/24   Page 17 of 24

very first action taken that ultimately resulted in the Cancellation Decision was President

Biden's issuance of Executive Order 13990. In that order, he acknowledged the "alleged

legal errors" with the Leasing Program and directed the Secretary to review the

program.[51] After reviewing the program, the Secretary identified multiple legal flaws

with the Leasing Program, including the agency's violation of NEPA for failing to

conduct a sufficient impacts analysis and analyze a reasonable range of alternatives, as

well as the failure to properly interpret and apply the Tax Act.[52] The Principal Deputy

Assistant Secretary of Land and Minerals Management's (Assistant Secretary) decision

suspending the leases further explained these legal deficiencies and identified that there

may be additional legal failings, specifically identifying potential problems with the

Bureau of Land Management's analysis of greenhouse gases.[53] In an addendum to the

lease-suspension letters, the Assistant Secretary confirmed that the greenhouse gas

---

[51] AR3351; *AIDEA v. Biden*, 685 F. Supp. 3d 813, 826 (D. Alaska 2023). It was imminently reasonable for the President to direct that review, given that there are four lawsuits challenging the legality of the Leasing Program, which raise a broad range of legal claims. *See Gwich'in Steering Comm. v. Haaland*, Case No. 3:20-cv-00204-SLG (Alaska D. Ct.); *Native Vill. of Venetie Tribal Gov't v. Haaland*, Case No. 3:20-cv-00223-SLG (Alaska D. Ct.); *Nat'l Audubon Soc'y v. Haaland*, Case No. 3:20-cv-00205-SLG (Alaska D. Ct.); *State of Wash. v. Haaland*, Case No. 3:20-cv-00224-SLG (Alaska D. Ct.).
[52] AR3362.
[53] AR3364–65.

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 12

Case 3:24-cv-00051-SLG   Document 75   Filed 08/30/24   Page 18 of 24

analysis was an additional legal deficiency.[54] The Deputy Secretary's decision to cancel the leases over two years later relied on these same legal deficiencies.[55]

Unlike *Department of Commerce*, which showed that the agency had a desired outcome, went in search of a justification, and contrived a sham rationale, the record in this case demonstrates that, from the start, the President and Interior were focused on whether there were legal errors with the Leasing Program and were consistent in their evaluation of the legal errors for over two years prior to cancelling the leases.[56] At best, AIDEA's arguments amount to speculation about there being political reasons for lease cancellation. But "speculation about alleged improper political influence is not a ground for invalidating agency action."[57] AIDEA has not identified any evidence demonstrating

---

[54] AR3404.

[55] AR5353–59. Interior explained how it was addressing these issues in the draft SEIS. AR3920, AR3592, AR3858–61, AR4055–57, AR4058–59 (Table 3-4), AR5180–83, AR5348–49.

[56] *See Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States*, 32 F.4th 1130, 1142 (2022) (explaining that *Department of Commerce* "expressly forecloses a challenge based on alleged political influence . . . particularly so where . . . the face of the agency decision does not identify that it was motivated by any improper consideration"); *see also Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 544 (D.D.C. 2021) (upholding agency decision against pretext claim because "none of the reasons contained in the [Interior] Memo [were] so lacking in credibility or so contradicted by other evidence as to suspect them contrived"); *Voyageur Outward Bound Sch. v. United States*, 2021 WL 1929123 at *3–5 (D.D.C. May 13, 2021) (holding that review of agency decision in furtherance of policy goals does not show bad faith where the agency carefully explains the legal errors as the basis of its decision).

[57] *Confederacion de Asociaciones Agricolas del Estado de Sinaloa, A.C.*, 32 F.4th at 1142.

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 13

that correcting the identified legal errors was not the genuine reason for Interior's action.[58]

AIDEA also fails to grapple with this Court's prior decision recognizing that Interior provided legitimate legal reasons for lease suspension.[59] In AIDEA's prior lawsuit, it asserted that, because Interior had previously defended the legality of the Leasing Program against a motion for a preliminary injunction, its subsequent determination that there were legal defects with the leases was arbitrary and did not meet the standard for an agency policy change.[60] This Court rejected this argument, specifically relying on *Department of Commerce* for the proposition that "'a court may not reject an agency's stated reasons . . . simply because the agency might also have other unstated reasons.'"[61] The Court recognized that ensuring that its decision complies with intervening court decisions is a legitimate reason for an agency's change in position.[62] The Court then discussed the Ninth Circuit's decision invalidating the greenhouse gas analysis in an environmental impact statement (EIS) based on the agency's failure to consider emissions from foreign-oil consumption.[63] The Court noted that the same issue

---

[58] *See Dep't of Com. v. New York*, 588 U.S. at 781; *Dallas Safari Club*, 518 F. Supp. 3d at 544.

[59] *AIDEA v. Biden*, 685 F. Supp. 3d at 854.

[60] *Id.* at 848.

[61] *Id.* at 850 (quoting *Dep't of Com. v. New York*, 588 U.S. at 851).

[62] *Id.* at 851.

[63] *Id.* (citing *Center for Biological Diversity v. Bernhardt*, 982 F.3d 723, 736 (9th Cir. 2020)).

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 14

created a flaw in the Leasing Program EIS, concluding that it was a valid reason for Interior's action to suspend the leases and pause permitting.[64] The Court specifically held that the justifications were "tethered to a concern about [the program's] legality and judicial review and not to some unrelated concern, such as a political motivation," and were sufficient under the APA.[65]

The justifications given for lease cancellation are the same as those that supported lease suspension: Interior's findings regarding the agency's prior unlawful interpretation of the Tax Act's 2,000-acre limitation on surface disturbance and its failure to analyze greenhouse gas emissions.[66] Interior has consistently, for over two years, pointed to these same justifications while taking action regarding the Leasing Program.[67] Accordingly, *AIDEA v. Biden* instructs that the Court should once again determine that Interior's stated justifications were legitimate and supported by the record.

In sum, AIDEA fails to offer any evidence demonstrating that Interior concocted the rationale that it was acting to address the legal errors with the Leasing Program as a ruse to distract from its real rationale, such that the Cancellation Decision was a pretext.[68]

---

[64] *Id.* at 850 & n.241.
[65] *Id.* at 854; *see also id.* (explaining that the fact that there may have also been political motivations does not overcome the stated justification).
[66] AR5356–58.
[67] AR3351, AR3362–63, AR3364–65, AR3404.
[68] *See also supra* n.39 and accompanying text (explaining how AIDEA has not met standard of genuine issue of material fact); *supra* Legal Standards.

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 15

Case 3:24-cv-00051-SLG   Document 75   Filed 08/30/24   Page 21 of 24

Accordingly, AIDEA cannot demonstrate that there is a genuine issue of material fact as to bad faith sufficient to withstand summary judgment on this claim.

Similarly, having failed to offer any evidence that Interior's contemporaneous justification was a sham, AIDEA has also failed to make the strong showing of bad faith to warrant extra-record discovery.[69] Relatedly, there is no reason for the Court to delay its decision while AIDEA waits to receive future documents in response to its Freedom of Information Act requests. AIDEA's assertion that future responses may provide the evidence required to justify extra-record discovery is based on speculation, not evidence.[70]

## CONCLUSION

The Court should reject AIDEA's request to suspend review of its pretext claim and allow for discovery, grant Defendants' and Intervenor-Defendants' motions for summary judgment, and enter judgment in favor of Defendants and Intervenor-Defendants Gwich'in Steering Committee et al. (collectively "Gwich'in Steering Committee") and the Arctic Village and Venetie Tribes on Count II(B).

Respectfully submitted this 30th day of August, 2024.

s/ Brook Brisson
Brook Brisson (AK Bar No. 0905013)
Suzanne Bostrom (AK Bar No. 1011068)
Bridget Psarianos (AK Bar No. 1705025)
TRUSTEES FOR ALASKA

---

[69] *See* AIDEA Pretext Br. at 13; *Dep't of Commerce*, 588 U.S. at 782.
[70] *Contra* AIDEA Pretext Br. at 11, 13–14.

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 16

*Attorneys for Intervenor-Defendants*
*Gwich'in Steering Committee, et al.*

s/ Karimah Schoenhut (consent)
Karimah Schoenhut (*pro hac vice*)
SIERRA CLUB ENVIRONMENTAL LAW
PROGRAM

*Attorney for Intervenor-Defendant Sierra*
*Club*

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 17

Case 3:24-cv-00051-SLG   Document 75   Filed 08/30/24   Page 23 of 24

<u>CERTIFICATE OF SERVICE</u>

I certify that on August 30, 2024, I caused a copy of the INTERVENOR-DEFENDANTS GWICH'IN STEERING COMMITTEE ET AL.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON COUNT II(B) AND MOTION FOR SUMMARY JUDGMENT ON COUNT II(B) to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system.

 s/ Brook Brisson 
Brook Brisson

<u>CERTIFICATE OF COMPLIANCE</u>

Consistent with Local Civil Rule 7.4(a), I certify that this brief complies with the type-volume limitation of Local Civil Rule 7.4(a)(1) as modified by order of the Court, ECF No. 49, which provides Intervenor-Defendants Gwich'in Steering Committee et al. shall have 60 pages or 17,000 words to divide between this brief and the brief presently filed June 14, 2024. This brief contains 3,936 words. The Gwich'in Steering Committee's brief filed June 14, 2024, in response to Counts I, II(A), III, IV, and V, contained 10,156 words. Counsel confirms that the two briefs total 14,092 words and, therefore, comply with the type-volume limitation.

 s/ Brook Brisson 
Brook Brisson

---

Gwich'in Steering Comm. et al.'s Response Brief on Claim II(B)
*AIDEA v. U.S. Dept. of the Interior*, Case No. 3:24-cv-00051-SLG          Page 18

Case 3:24-cv-00051-SLG   Document 75   Filed 08/30/24   Page 24 of 24