James Lister, ABA #1611111
Brian V. Gerd, ABA #1810097
David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
jlister@bhb.com
bgerd@bhb.com
dgross@bhb.com
zeisberg@bhb.com
Telephone 907.276.1550
Facsimile 907.276.3680

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPERT AUTHORITY, <br><br> Plaintiff, <br><br> vs. <br><br> U.S. DEPARTMENT OF THE INTERIOR, DEB HAALAND, in her capacity as Secretary of the Department of the Interior, BUREAU OF LAND MANAGEMENT, and TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; <br><br> Defendants. | Case No.: 3:24-CV-00051-SLG |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO SUPPLEMENT RECORD**

i

In opposition to Plaintiff AIDEA's Motion to Supplement the Administrative Record (ECF 68), Defendant Department of Interior ("DOI") and Defendant-Intervenors levy a host of arguments (ECF 72 and 73). Each of the asserted arguments relies on a misreading of applicable caselaw and is inconsistent with DOI's own decisions in including documents in the record.

I. **DOI misapplies the caselaw regarding post-decisional documents.**

In asking the Court to exclude from the administrative record AIDEA's Exhibits 1, 2, and 4—government-generated email chains and a press release which are contemporaneous with or post-date the Lease Cancellation Decision—Federal Defendants and Defendant-Intervenors overlook an important distinction. Specifically, the Ninth Circuit has held that when a party challenges or defends the "rationalization" stated by the agency in the decision under review, the administrative record stops at the decision under review and does not include documents post-dating that decision.[1] Post-decisional documents cannot be offered for the "purpose" of challenging or defending the adequacy of the agency's stated rationale.[2] This standard, however, necessarily recognizes that an

---

[1] *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Service*, 450 F.3d 930, 943-44 (9th Cir. 2006). More precisely, under this case, post-decisional documents cannot be offered for the "purpose" of offering a "new rationalization" that supports or rebuts the agency decision. *See id*. (internal citation omitted). Other cases minimize the distinction between "new" rationalizations and non-new rationalizations. *See, e.g., San Luis & Delta-Mendota Water Auth. v. Jewell,* 747 F.3d 581, 603-604 (9th Cir. 2014) (chastising trial court for overstepping its bounds in admitting extra-record evidence pertaining to agency's rationalization for decision). *Friends of the Clearwater v. Higgins,* 523 F. Supp. 3d 1213, 1221 (D. Idaho 2021) (post-decisional evidence cannot be used to challenge the "wisdom" of the agency's reasoning, because the agency "is not required to make decisions on data that does not yet exist") (internal citations omitted).

[2] *Ctr. for Biological Diversity,* 450 F.3d at 944.

1

administrative record should include relevant agency documents post-dating the decision when the inclusion of those documents serves a purpose other than challenging or defending the adequacy or wisdom of the agency's stated rationale.[3] AIDEA does not seek to rely on these documents to support its claims challenging the merits of Federal Defendants' "official" rationale for the lease cancellation. Those matters were fully briefed by the parties in the first phase of briefing in this case, without reference to the documents that AIDEA seeks to add to the record.[4]

The documents are instead relevant only for consideration of AIDEA's separately-briefed pretext claim, Count II(b). As the Supreme Court recognizes, an agency rationale must be "genuine" as well as supported by the law and facts.[5] When a plaintiff asserts that an agency's stated rationale is not genuine, the inquiry is no longer strictly about whether the law and facts available to the agency at the time it issued its stated rationale adequately support that rationale; thus, the inquiry should no longer be temporally limited to the evidence before the agency at the precise time it issued the official rationale.[6] Therefore, if

---

[3] *E.g., Kunaknana v. Clark*, 742 F.2d 1145, 1149 (9th Cir. 1984) (admitting post-decisional documents to "explain" agency decision, citing *Asarco, Inc. v. U.S. E.P.A.,* 616 F.2d 1153, 1158-61 (9th Cir. 1980)); *Nat Res. Def. Council v. Blank,* 2013 WL 2450110, at *5 (N.D. Cal. 2013) (admitting post-decisional affidavit to show "harm"); s*ee also, Ass'n of Pac. Fisheries v. E.P.A.,* 615 F.2d 794, 811-2 (9th Cir. 1980) (admitting for limited explanatory and clarification purposes data developed subsequent to decision).

[4] *See* DE 50, 52, 53, 59; *see* DE 49, 64 (establishing two-phase briefing schedule).

[5] *Dep't of Commerce v. New York,* 588 U.S. 752, 785 (2019).

[6] *See New York v. U.S. Dep't of Commerce*, 351 F.Supp.2d 502, 527-28, 546-47 (SDNY 2019) (considering in deciding pretext claim: (1) a Report to Congress issued by the agency "a few days after" the March 26, 2018 decision being judicially reviewed; (2) Congressional testimony by the Secretary of Commerce two months later in May, 2018;

2

an agency document exists that supports the conclusion that its stated rationale was pretextual, the document should become part of the administrative record, regardless of whether it pre-dates or post-dates the agency's decision by a few days. Agencies cannot assert that a pretext claim is meritless while excluding from the record the very documents necessary for the Court to fairly inquire into the basis for the agency's decision-making. This situation fundamentally differs from one in which a plaintiff challenges the adequacy of an agency's stated rationale based on subsequently-developed information that was not before the agency at the time it made its decision and stated its rationale.[7]

**A. The Administrative Record Already Includes Post-Decisional Documents and AIDEA's Proposed Supplementation is Consistent with the Reasons Those Documents are in the Record.**

Tellingly, the administrative record already includes several post-decisional documents. An examination of those documents corroborates the position that agency documents which post-date the decision are properly part of the record if they serve a purpose other than supporting or challenging the agency's stated rationale for its decision. For instance:

Rent Refund Documentation (AR 5452). DOI placed in the administrative record lease rental refund paperwork from December 1, 2023, 80 days after lease cancellation. This post-decisional document serves a purpose other than supporting or challenging the

---

(3) a supplemental memorandum issued by the agency in June, 2018 that was stipulated as admissible; and (4) representations by the agency in a brief filed with the Supreme Court in December, 2018), *Dep't. of Comm.,* 588 U.S. at 782, 785 (affirming in part, reversing in part, and remanding, without comment on admitting these specific items).

[7] *See Ctr. for Biological Diversity*, 450 F.3d at 943-44.

3

adequacy of the rationale stated by DOI for cancelling leases. It illustrates DOI's implementation of the Lease Cancellation Decision, which promised to refund to AIDEA its rent payment. The document is properly included in the record, illustrating that exclusion of post-decisional materials is not the rule in all circumstances.

AIDEA's post-decision comments on the Draft SEIS (AR 5366-5451) and AIDEA's post-decision public testimony (AR 5365). Illustrating this same principle, DOI also placed into the record AIDEA's November 7, 2023 comments on the Draft SEIS and AIDEA's October 16, 2023 testimony at a public meeting on the Draft SEIS. Again, both substantially post-date the actual decision under review. Thus they cannot be cited to judge the adequacy of the Lease Cancellation Decision's stated rationale for cancelling AIDEA's leases, but may be cited for other purposes. This includes establishing the procedural history of the matter before the agency. Defendant-Intervenors rely on these documents to assert DOI provided AIDEA with adequate "post-deprivation due process" by providing an opportunity for AIDEA to comment on the Draft SEIS after DOI had already cancelled AIDEA's leases.[8] As was separately briefed, Defendant-Intervenors' defense fails on the merits for multiple reasons. For example, DOI stated in the September 6, 2023 Lease Cancellation Decision that cancellation was "final" and "not subject to appeal," meaning AIDEA had no opportunity after that decision to provide meaningful input on whether DOI should cancel the leases (AR 5359).[9] Nevertheless it probably was still proper for DOI to place AIDEA's post-decisional comments and testimony on the Draft SEIS in the record,

---

[8] Gwich'in brief on other non-pretext issues at 27-28 (ECF 53).
[9] AIDEA reply brief on non-pretext issues at 8-9, 12 (ECF 65).

4

if for no other purpose than showing the procedural history of this matter. Yet by Defendants' own logic, these documents should have been excluded as post-decisional.

Like the above-referenced record materials, the documents that AIDEA proposes to add are offered for reasons other than supporting or challenging the adequacy of DOI's stated rationale for cancelling AIDEA leases:

<u>Motion to Supplement Exhibit 2</u>. This exhibit is an email chain beginning September 6, 2023, the date of the Lease Cancellation Decision, and concluding on September 13, 2023. It shows that for at least a week after DOI issued and announced its Lease Cancellation Decision, DOI officials were reluctant to make that decision document publicly available. During that period, DOI instead publicized the different rationale for lease cancellation advanced by Secretary Haaland in her announcement to the press.[10]

The chain is not offered to challenge the legal and factual adequacy of the rationale stated in the Lease Cancellation Decision (that DOI was cancelling leases, fixing the program, and getting ready to resume an oil and gas drilling program). Rather, this correspondence shows that DOI de-emphasized that rationale in favor of another rationale stated by Secretary Haaland (that DOI was acting to prevent drilling in ANWR from occurring). Whether an agency's official rationale provides the genuine reason for its decision is a different question from whether the facts before the agency at the time of its decision adequately support that rationale. Whether an agency emphasizes or de-

---

[10] *See* AIDEA Opening Brief on pretext at 4-5 (ECF 69-1) (citing DOI's Answer to Amended Complaint, ¶ 61 (ECF 20)).

emphasizes one stated rationale for a decision over another cannot be known until after the decision is made and the rationales are offered.

Further, how an agency distributes its decision can be a significant aspect of its implementation of the decision. As with the refund paperwork, post-decisional documents may properly show the agency's implementation of the decision, which can be relevant to motivation. This is as opposed to being used for the purpose of evaluating the adequacy of the agency's stated rationale.[11]

Federal defendants argue that this email chain and other "post-decisional" documents AIDEA offers "are not about substantive considerations that may have informed the decision," but rather concern topics such as "providing copies of the decision" and "post hoc communications regarding the decision."[12] But that is precisely why the documents are properly part of the administrative record. They are not offered as post-decisional "substantive considerations" for or against the adequacy of the rationale DOI set forth in its Lease Cancellation Decision. The caselaw forbids supplementation for those reasons. Instead, they are offered to show the agency in its immediate post-decision communications downplayed its official rationale in favor of another.[13]

---

[11] Because the information is not offered to challenge or defend the adequacy of the stated rationale for the decision, the general rule against including post-decisional information in the record does not apply, and this is before one even gets to considering the recognized exceptions to that general rule. *See Ctr. for Biological Diversity*, 450 F.3d at 943-44.

[12] DOI Opposition to Supplementation at 7 (DE 72).

[13] Because the documents are not offered to challenge the adequacy of the rationale stated in the Lease Cancellation Decision, it is immaterial whether they were directly or indirectly considered by the decision-maker who developed that rationale.

6

Motion to Supplement Exhibit 1. This email chain starts September 6, 2023, the day of the Lease Cancellation Decision, and concludes the next day on September 7. The chain shows BLM Director Tracy Stone-Manning participated in responding to apparent internal criticism within the Administration immediately following issuance of DOI's news release (AR 5360-62) announcing lease cancellation. She received redacted attorney-client privileged advice in the email chain, evidently on this topic. From her participation, one can infer that she may have been involved in the days and weeks before that in advising even more senior officials on the decision to cancel the leases.[14] This and other evidence of her involvement buttresses the relevance of her pre-set views against oil and gas leasing in ANWR. Those views were recorded in the under-oath Declaration she filed with the Court in December 2020 (see Exhibit 5) and align with the rationale articulated by Secretary Haaland in announcing lease cancellation. This is another example of including an agency document (the email chain) in the record for a purpose (showing the involvement of an agency official in decision-making) other than challenging or supporting the adequacy of the legal and factual rationale for the decision.[15]

Motion to Supplement Exhibit 4. This document is President Biden's September 6, 2023 news release approving of the decision to cancel AIDEA's leases. If the President's

---

[14] FOIA production responsive to AIDEA's inquiries is not yet complete, so AIDEA does not know for sure the extent of Ms. Stone-Manning's participation in that process.

[15] If the September 6, 2023 emails in the chain are deemed "post-decisional," then the grounds of apparent internal dissent reflected in an email that date in the chain may not be admitted to challenge the adequacy of the rationale in the Lease Cancellation Decision. However, the email chain should still be included in the administrative record to show Director Stone-Manning's role in matters concerning AIDEA's leases.

7

news release is deemed to be post-decisional, it is still a proper part of the record to consider AIDEA's pretext claim. The presidential statement bolsters the conclusion that DOI's true rationale for cancelling the leases was its view that drilling for oil and gas in ANWR should never occur. It is consistent with Secretary Haaland's September 6, 2023 statement, which the parties have agreed is admissible, as well as Ms. Stone-Manning's December 2020 affidavit (Exhibit 5). It is not offered to challenge the adequacy of the rationale stated in the Lease Cancellation Decision or as evidence of what was before DOI when it decided to cancel AIDEA's leases. Rather, it corroborates AIDEA's other evidence that the reasoning stated in the Lease Cancellation Decision was not the true reason for the agency's decision. Moreover, all four expositions of the decision (the Lease Cancellation Decision, Secretary Haaland's recorded verbal statement, DOI's news release, and President Biden's News Release) are dated September 6, 2023. It would be inappropriate to include some but not all of them in the record. These materials issued the same day as the Lease Cancellation Decision should be treated as contemporaneous.

### B. Other Defense Arguments for Excluding Documents Lack Merit.[16]

Motion to Supplement Exhibit 2. DOI suggests that this email chain shows that DOI officials were reluctant on September 13, 2023 to make the Lease Cancellation Decision public because they wanted to give AIDEA the opportunity to read the decision before it become public. This speculative and strained argument falls flat. Nothing in the chain

---

[16] AIDEA agrees with Defendants that judicial notice is a means of establishing the authenticity of documents. Judicially noticeable documents must still meet the criteria for admission to the administrative record or qualify as allowed extra-record evidence.

remotely suggests concern for AIDEA's privacy. Seven days before, Secretary Haaland announced the lease cancellation to the world in a press conference and DOI issued a news release providing that information (AR 5360). DOI can argue its alternative interpretation of this email chain in its substantive opposition to AIDEA's pretext brief. However, DOI's post-hoc interpretation is not a basis for excluding the document from the record.

<u>Motion to Supplement Exhibit 3.</u> In this September 5, 2023 email, BLM staffers recount being asked by BLM Director Tracy Stone-Manning to expedite preparation of the Draft SEIS. Defendants resist inclusion of the email chain, contending that AIDEA is not challenging the Draft SEIS (AR 3923-5352), but rather is challenging the Lease Cancellation Decision. However, the Lease Cancellation Decision 1) relies on and cites to the Draft SEIS (AR 5356-58); 2) was issued concurrently with the Draft SEIS; and 3) is relevant to DOI's earlier promise to AIDEA that it would use a NEPA process (i.e. preparation of an SEIS) to evaluate AIDEA's leases (AR 3365). Evidence that the agency accelerated the issuance of the Draft SEIS, and decided not to tell NEPA cooperating agencies that it was about to be issued, is appropriately part of the record. It bears on the quality of the Draft SEIS as work product. More importantly, and regardless of whether BLM Director Stone-Manning's direction was to accelerate completion of the Draft SEIS or accelerate its publication in the Federal Register, the email chain shows her oversight of the preparation of a document DOI relied on in cancelling AIDEA's leases. This role further shows the importance of her pre-set views against the project (Exhibits 5 and 6). It provides important context to these documents, which are properly part of the record.

9

Motion to Supplement Exhibits 5 and 6. The caselaw allows consideration of extra-record documents that bear on whether the agency "considered all relevant factors" in rendering a decision.[17] Ms. Stone-Manning's December 2020 Declaration, in which she expressed her belief that drilling for oil and gas in ANWR should not occur (Exhibit 5), and her accompanying press statement (Exhibit 6), establish that she had pre-set views opposing an ANWR oil and gas project. The existence of pre-set views on the part of a relevant senior agency official is itself a relevant factor, and one the agency should have considered in making its decision.[18] For example, had the agency considered that Ms. Stone-Manning held pre-set views locked in place by prior under-oath testimony on behalf of a project opponent (and thus considered a factor relevant to its process for making its decision), it might have taken appropriate action. The agency should have ensured that she had no role in deciding what to do with AIDEA's leases or in preparing the Draft SEIS that informed the decision on AIDEA's leases. Instead, the evidence suggests that Ms. Stone-Manning did play a significant role in the decision-making process, despite these views (Exhibits 1, 2, and 3). This reality further suggests that the agency's real reason for cancelling AIDEA's leases was the heartfelt belief of it and its officers that drilling for oil in ANWR should not occur.

DOI contends that, in signing her Declaration, Ms. Stone-Manning merely stated the views of her then-employer, the National Wildlife Federation (NWF), and that her

---

[17] *Ctr. for Biological Diversity,* 450 F.3d at 943.

[18] To the extent necessary, information concerning pre-set views of senior officials is a category of information not otherwise addressed in the administrative record, as opposed to information that would be cumulative of information already in the record.

10

statements therefore were not constraining on her in her subsequent position as BLM Director. This assertion downplays the realities of sworn witness testimony. Ms. Stone-Manning signed the Declaration as a witness testifying under oath, and was required to accurately state her own sincere views. The Declaration and her accompanying statement to the press (Exhibits 5 and 6) establish that her pre-set views were strongly against the project.

DOI notes that AIDEA relies on a case cited for the proposition that extra-record evidence is properly admitted to show a conflict-of-interest, and in that case, a CFR section explicitly directed the agency to evaluate whether conflicts-of-interest existed.[19] However, evidence that a senior agency official involved in the project previously expressed under oath a viewpoint hostile to a project is a relevant factor in an agency proceeding concerning the project. This is true whether or not a CFR provision supplies a similar reminder. Despite DOI's argument to the contrary, such consideration is as true in APA judicial review cases as it is in the context of ERISA judicial review on the administrative record, a context in which the Ninth Circuit has found such evidence to be admissible extra-record evidence.[20]

<u>Relationship Among Exhibits</u>. As discussed above, both pre-decisional and post-decisional evidence can support a pretext claim. However, even if *arguendo* only pre-decisional documents could support a pretext claim, Tracy Stone-Manning's December 2020 Declaration (Exhibit 5) and accompanying press statement (Exhibit 6) are pre-

---

[19] *Nat'l Audubon Soc'y v. U.S. Army Corps of Engineers,* 2018 WL 4760124, *4 (E.D.N.C. 2018), cited in Motion to Supplement (DE 68) at 15, n. 35.

[20] *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 970 (9th Cir. 2006).

11

Case 3:24-cv-00051-SLG Document 76 Filed 08/30/24 Page 12 of 14

decisional. Further, the two email chains that are contemporaneous with or slightly post-date the Lease Cancellation Decision (Exhibits 1 and 2) serve to verify her role in working on issues concerning the Draft SEIS and the cancellation of AIDEA's lease, which provides a foundation for the relevance of the pre-decisional declaration and statement. Exhibits 1 and 2 should be considered in their own right, as discussed above, but at the very least they can serve to lay a foundation for the admission of pre-decisional Exhibits 5 and 6, through verifying Tracy Stone-Manning's role in this matter.[21]

### C. Conclusion

While DOI would prefer that the exhibits to AIDEA's Motion to Supplement the Administrative Record be excluded, the supplementation of the record with these materials is not only consistent with applicable caselaw, but also necessary for AIDEA to be afforded an opportunity to fully and fairly litigate its pretext claim. The Court should grant AIDEA's Motion to Supplement the Administrative Record.

DATED this 30TH day of AUGUST, 2024.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiff

By: /s/ James H. Lister
James Lister, ABA #1611111
Brian V. Gerd, ABA #1810097
David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094

---

[21] Motion to Supplement Exhibit 3 (September 5, 2023 email) is pre-decisional and further verifies her participatory role.

12

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 30th day of August, 2024, a true and correct copy of the foregoing was served on all parties to this case via the Court's CM/ECF electronic delivery system:

BIRCH HORTON BITTNER & CHEROT

By: _/ s / James H. Lister_