James Lister, ABA #1611111
Brian V. Gerd, ABA #1810097
David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
jlister@bhb.com
bgerd@bhb.com
dgross@bhb.com
zeisberg@bhb.com
Telephone 907.276.1550
Facsimile 907.276.3680

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT AUTHORITY,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. DEPARTMENT OF THE INTERIOR, DEB HAALAND, in her capacity as Secretary of the Department of the Interior, BUREAU OF LAND MANAGEMENT, and TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management;<br><br>Defendants. | Case No.: 3:24-cv-00051-SLG |

**Plaintiff's Reply Brief in Support of its Count II(b) Pretext Claim**

AIDEA V. HAALAND, ET AL.　　　　　　　　　　　　　　　　CASE NO. 3:24-CV-00051-SLG
REPLY IN SUPPORT OF COUNT II(b)　　　　　　　　　　　　　　　　PAGE i OF 1
503357\290\1726875
Case 3:24-cv-00051-SLG  Document 81  Filed 09/13/24  Page 1 of 11

Plaintiff Alaska Industrial Development and Export Authority ("AIDEA") respectfully submits this reply in support of its briefing regarding its Count II(b) pretext claim. While Defendants' opposition memoranda accuse AIDEA of misstating the standard of review applicable to this claim and of making an improper Rule 56(d) continuance request, these arguments are without merit. Should the Court decline to grant AIDEA the relief sought by its other substantive claims, it should allow the pretext claim to proceed to a hearing on the merits.

I. **Defendant misapply the elements of a pretext claim.**

First, Defendants contend that a showing of "bad faith" is required to establish a pretext claim and assert that AIDEA has not made such a showing.[1] The cases cited by Defendants are inapplicable: they stand for the proposition that a showing of agency bad faith is but one way to admit extra-record evidence in an APA case and obtain discovery.[2] They do not establish that "bad faith" is a substantive element of a pretext claim. It is not.

---

[1] DOI Count II(b) brief at 9 (ECF 74); Defendant-Intervenor Gwich'in Brief at 5, 9 (ECF 75).

[2] *Rao v. SEC*, No. 23-1072, 2023 WL 8432468, *1 (DC Cir. Dec. 5, 2023) ("[n]or has petitioner made 'the strong showing of bad faith or improper behavior' ***that is necessary to justify extra record discovery***") (emphasis added, quoting *Dep't of Commerce. v. New York,* 588 U.S. 752, 781 (2019)); *Hays Med. Ctr. v. Azar*, 956 F.3d 1247, 1271, n. 21 (10th Cir. 2020) (remark by agency counsel post-dating decision could not be considered in judicial review of APA claims); *Ctr. for Biological Diversity v. Trump*, 453 F.Supp.3d 11, 33-34 (D.D.C. 2020) (court reluctant to introduce evidence of unstated motives of the President for taking presidential action, finding APA jurisdiction was lacking in any event); *see also*, *Biden v. Texas*, 597 U.S. 785, 811-812 (2022) (citing passages in *Dep't of Commerce v. New York*, 588 U.S. 752, 780-81 (2019) which discourage claims that a rationale not contemporaneously articulated by an agency official was the true reason for the decision -- fully reviewed in AIDEA opening Count II(b) brief at 11-12 (ECF 69-1)).

Defendants' cases trace back to the Supreme Court's landmark *Citizens to Preserve Overton Park* decision.³ There the Court discouraged discovery into the mental processes of agency officials, but said such discovery could be taken and the resulting extra-record evidence admitted if there was a preliminary showing the agency acted in bad faith.⁴ Such procedural hurdles are rooted in judicial reluctance to allow the probing of the mental processes of agency officials through their testimony.⁵ They are inapplicable when, as here, (i) the agency head spoke publicly on the day the agency releases its decision; (ii) the parties stipulated to the admissibility of those remarks; (iii) and the plaintiff alleges those contemporaneous remarks are sincere and better reflect the true reason for the agency decision than does the official stated rationale.⁶ When there are two stated rationales for the same action, both must be lawful, regardless of the good or bad faith of the agency.⁷

In *Dep't of Commerce v. New York*, the Supreme Court considered "bad faith" to be a pathway to admission of extra-record evidence and as a prerequisite for discovery, but not as a substantive element of a pretext claim.⁸ The Court may arguably have required proof of bad faith to the extent the plaintiff asserted the agency's real rationale was

---

3   *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

4   *Id.*, 401 U.S. at 420 (quoted in *Dep't of Commerce*, 588 U.S. at 781).

5   *Id.; see also, In re U.S. Dep't. of Education*, 25 F.4ᵗʰ 692, 702-703 (9ᵗʰ Cir. 2022).

6   See Haaland Remarks (ECF 20, ¶61 and ECF 48 at 2, n. 1)

7   See *Natl. Fuel Gas Supply Corp. v. F.E.R.C.*, 468 F.3d 831, 839 (D.C. Cir. 2006) (cited in AIDEA's opening Count II(b) brief, p. 2, n. 5).

8   588 U.S. 752, 781 (2019) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

something other than a rationale contemporaneously stated by an agency official. But here Secretary Haaland's remarks, which contained the real rationale, were contemporaneously made in announcing the decision under review.[9] Further, Defendants' cited cases do not bar a pretext plaintiff from using other recognized pathways to get evidence before the Court, including: (a) completing the administrative record, i.e. getting into the record material that should have been there in the first place; (b) securing stipulations to the admissibility of evidence; and (c) establishing that materials are admissible as evidence the agency failed to consider factors it should have considered.[10] In summary, there is authority that the court may infer the agency has acted in bad faith from evidence that the official stated reason for agency action was pretextual, but a plaintiff need not prove bad faith in order to establish that the official stated reason was a pretext.[11]

The issue on which the pretext claims turns is whether Secretary Haaland's announcement (ECF 48 at 2, n. 1) concurrent with lease cancellation that "no one will have rights to drill oil in one of the most sensitive landscapes on Earth" (1) referred only to the period of time immediately after lease cancellation, or (2) referred to some much longer

---

[9] *Id.* at 780-81. See AIDEA opening brief on Count II(b) at 11-12 (ECF 69-1).

[10] See *Thomason v. U.S. Dep't of Lab.*, 885 F.2d 551,555 (9th Cir. 1989); *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

[11] *Sweet v. DeVos*, 495 F.Supp.3d 835, 844 (N.D. Cal. 2020) (finding a pretext and from that finding inferring bad faith), *compare, In re U.S. Dep't. of Education,* 25 F.4th 692, 703 (9th Cir. 2022) (upholding this aspect of the District Court ruling in the series of cases including *Sweet*, rescinding a subsequent order in one of those cases authorizing deposition of the Secretary of Education herself); *see Brnovich v. Biden*, 630 F.Supp.3d 1157, 1176-78 (D. AZ 2022) (denying Rule 12(b)(6) motion to dismiss a pretext claim involving immigration policy, not requiring that "bad faith" be pleaded to state a viable claim).

period of time. The former would be consistent with DOI's "official rationale" (which involved a promise to promptly restart the ANWR oil and gas drilling program and issue new leases); the latter would conflict with that official rationale.[12]

In evaluating this issue, the Court should consider how Secretary Haaland's words would be understood by stakeholders, such as the civil servants charged with day-to-day implementation of the Tax Act, the oil and gas industry, local governments, and interested members of the public. These stakeholders would reasonably rely on the leadership of DOI for guidance on whether DOI will allow oil and gas drilling in ANWR to occur. A civil servant likely wants to know if the ultimate supervisor wants drilling to occur or wants to block drilling, and will carry out his or her work accordingly. Dense official documents such as a Draft SEIS (AR 3923), as well as the Lease Cancellation Decision (AR 5353) that DOI was reluctant to make public,[13] may be cited by Defendants to suggest resumption of the leasing program is on the horizon, but they only go so far. When the Secretary speaks her true feelings on a matter, is backed up by the President, and is assisted by a senior subordinate (BLM Director Stoney-Manning) who is a committed project opponent, a weightier and more meaningful message is sent than that reflected in DOI's private letter

---

[12] The parties have already fully briefed this issue. AIDEA Opening Brief on Count II(b) at 4-5 (DE 69-1); DOI June 7, 2024 Brief at 27, n. 9 (ECF 51).

[13] See Motion to Supplement Administrative Record Ex. 2 (ECF 68-3).

to AIDEA or in the draft SEIS.[14] The honest interpretation of Secretary Haaland's words is that DOI will prevent drilling from ANWR from occurring.[15]

Indeed, the Secretary's statement has largely come to fruition. It is worth noting that, despite all the documents regarding the ANWR program that DOI has generated since it imposed the program moratorium almost three-and-a-half years ago, no seismic exploration has occurred; no historic resource surveys have occurred; and no concrete on-the-ground progress has occurred. DOI's target dates for completing supplemental NEPA work and a new ROD have repeatedly slipped.[16] It has failed to facilitate the oil and gas leasing program for ANWR as Congress ordered in the Tax Act, P.L. No. 115-97 § 20001.[17]

Defendant-Intervenors suggest that the rationale for lease cancellation stated in the Lease Cancellation Decision cannot be pretextual because it is in part similar to the

---

[14] *See* Haaland Remarks (ECF 20, ¶61 and ECF 48 at 2, n. 1); Motion to Supplement Administrative Record Exs. 1-3, 5-6 (ECF 68); AIDEA opening Count II(b) brief at 4 to 10 (reviewing documents). After commending ANWR lease cancellation, President Biden's news release (ECF 68-5) promised to protect the Arctic "for generations to come." In the sentence announcing lease cancellation, the President stated that cancellation "will help preserve our Artic lands and wildlife" and cultural values that have been in place "since time immemorial." There is no indication such protection from drilling is temporary.

[15] The news release that DOI issued on September 6, 2023 does not dispel the clear implications of Secretary Haaland's remark that drilling will be prevented. AR 5360

[16] See Status Reports filed by DOI in Case No. 3:20-cv-00204-SLG on June 28, 2024. April 28, 2023, and July 1, 2022 (ECF 104, 95, 89).

[17] More generally, oil and gas lease issuance has sharply declined nationally in the last 3.5 years, as compared to prior Administrations. "New lease for oil, gas plummet under Biden-Harris. Will the future hold more of the same?" Deseret News (September 12, 2024) https://www.msn.com/en-us/news/politics/new-leases-for-oil-gas-plummet-under-biden-harris-will-the-future-hold-more-of-the-same/ar-AA1qurmI?ocid=msedgntp&pc=U531&cvid=27a7c87018994ed09132a7498053081b&ei=39 (last viewed September 13, 2024).

rationale for lease suspension and the moratorium stated in earlier DOI decisions in 2021 and 2002 that this Court affirmed in its August 7, 2023 opinion in the prior case. This superficially attractive argument fades following recognition that Secretary Haaland did not make her remarks that no one will have the right to drill in ANWR until September 6, 2023, the day DOI cancelled the leases. *Only then* was there a publicly stated rationale issued by the senior-most agency official (Secretary Haaland) which could be found to be in tension with an official rationale (the Lease Cancellation Decision).

Until that key moment in time (when Secretary Haaland revealed DOI's true motivation for cancelling the leases), AIDEA may well have needed to show bad faith to prevail on a pretext claim. Similarly, the evidence that DOI refrained for some time from making public its official rationale for cancelling the leases, and was reluctant to circulate it, also came about in the days immediately following September 6, 2023.[18] None of this information, including the Lease Cancellation Decision, was available in the prior case.

More generally, a case involving two conflicting contemporaneously-stated rationales (Deputy Secretary Beaudreau's letter and Secretary Haaland's recorded remarks announcing the decision) inherently differs from a claim in which there is one stated agency rationale that is allegedly marred by unstated motives. Precedents requiring plaintiffs to surmount elevated burden of proof hurdles of various types are grounded in judicial reluctance to direct judicial review at alleged unstated rationales (or "post-hoc" non-contemporaneously-issued rationales). Such precedents should not be blindly and

---

[18] Motion to Supplement Ex. 2 (ECF 68-3).

AIDEA V. HAALAND, ET AL.     CASE NO. 3:24-CV-00051-SLG
REPLY IN SUPPORT OF COUNT II(b)     PAGE 6 OF 10
503357\290\1726875

Case 3:24-cv-00051-SLG    Document 81    Filed 09/13/24    Page 7 of 11

automatically extended to the situation where there are two contemporaneously stated rationales. In that situation, why should agency counsel be allowed to pick and choose which stated rationale he or she would prefer to defend, and then presumptively confine judicial review to that one rationale? If an agency chooses to deliver different rationales to different audiences that it perceives have different values, it should have to defend both rationales.

DOI cannot be allowed to simultaneously (1) assure the Court and AIDEA that it will carry out its statutory responsibilities under the Tax Act to administer an oil and gas program in ANWR and (2) assure the public and everyone else that it will never allow drilling to occur in one of the most sensitive landscapes on Earth. The two rationales are contradictory, and that itself is arbitrary.

## II. Case scheduling issues and Fed.R.Civ.P. 56(d)

Second, Defendants suggest that by not moving for a plaintiff-side summary judgment on the pretext claim, and therefore seeking a trial if Court does not grant AIDEA summary judgment on its other claims, AIDEA is disregarding the parties' agreement in their joint motion (ECF 48) asking the Court to decide the case by October 25, 2024.[19] Not so. AIDEA's briefing simply points out that the facts, as supplemented by FOIA productions made over the few months, are what they are. AIDEA appropriately recognizes that these facts do not support a grant of summary judgment to either side on the pretext

---

[19] Joint Motion for a Scheduling Order at 4 (ECF 48). The aspirational October 25, 2024 target date should be adjusted to reflect the parties' stipulated two-week briefing extension (ECF 64).

AIDEA V. HAALAND, ET AL.  
REPLY IN SUPPORT OF COUNT II(b)  
503357\290\1726875  
CASE NO. 3:24-CV-00051-SLG  
PAGE 7 OF 10

Case 3:24-cv-00051-SLG   Document 81   Filed 09/13/24   Page 8 of 11

claim. In other words, AIDEA does not need to seek a Rule 56(d) continuance, because it has shown *now* that disputed issues of material fact preclude summary judgment. [20]

AIDEA's decision not to seek summary judgment in its favor on the pretext claim realistically assesses the fact-intensive nature of that claim. Agency officials rarely admit the agency's official rationale was not the genuine rationale, so proof of pretext will necessarily be circumstantial and based on conflicting evidence.

Moreover, as AIDEA explained in its opening brief on the pretext claim, the fact-intensive pretext claim needs to be reached only if the Court does not grant AIDEA summary judgment on its other claims. Having persuaded the Court to affirm the temporary and lesser step of lease suspension, it appears that DOI became overconfident and rashly jumped to cancelling AIDEA's leases, without first providing AIDEA any opportunity to provide input, and without adequately considering the differences between suspension and cancellation.

The Court should grant AIDEA summary judgment on its other claims, each of which is directed at the official rationale stated in the Lease Cancellation Decision, because:

(1) DOI cancelled AIDEA's leases without first providing AIDEA with an opportunity to contest the claim of error in the inception or contest the severe remedy of lease cancellation, and so failed to provide due process of law;

---

[20] DOI characterizes AIDEA's briefing as seeking to postpone the entry of summary judgment in Defendants' favor, without complying with Fed.R.Civ.P. 56(d)'s requirements for a request to defer consideration of a summary judgment motion in order to gather evidence with which to oppose the motion. This is incorrect. AIDEA needs more information to prepare for trial, or seek summary judgment in its own favor, but it has already presented sufficient evidence to defeat Defendants' summary judgment motions.

(2) Cancelling AIDEA's leases undid DOI's compliance with the Tax Act's mandate to issue oil and gas leases by December 2021, and so was contrary to statute;

(3) DOI relied heavily upon precedent construing a different oil and gas leasing statute under which issuing leases was discretionary, and thus fully subject to NEPA, rather than non-discretionary, as the Tax Act provides for ANWR; and

(4) DOI disregarded a National Petroleum Reserve Alaska rule, borrowed for ANWR by the Tax Act, that required DOI to seek a judicial order to cancel leases of lands known to contain valuable oil and gas resources.[21]

### III. Conclusion

The Court should grant AIDEA summary judgment on Counts I, II(a), III, IV and V; if it does so, it need not reach the Count II(b) pretext claim. If the Court cannot grant AIDEA summary judgment on its other claims, it should deny the Defendants' motion for summary judgment on the pretext claim and direct the parties to propose an order scheduling further proceedings on that claim.

DATED this 13th day of September, 2024.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiff

By: /s/ James H. Lister
James Lister, ABA #1611111
Brian V. Gerd, ABA #1810097
David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094

---

[21] AIDEA Opening Brief on Counts I, II(a), III, IV, and V (ECF 50) and AIDEA Reply brief on those Counts (ECF 65).

AIDEA V. HAALAND, ET AL.     CASE NO. 3:24-CV-00051-SLG
REPLY IN SUPPORT OF COUNT II(b)     PAGE 9 OF 10
503357\290\1726875

Case 3:24-cv-00051-SLG    Document 81    Filed 09/13/24    Page 10 of 11

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 13th day of September, 2024, a true and correct copy of the foregoing was served on all parties to this case via the Court's CM/ECF electronic delivery system:

BIRCH HORTON BITTNER & CHEROT

By: */s/ James H. Lister*

AIDEA V. HAALAND, ET AL.     CASE NO. 3:24-CV-00051-SLG
REPLY IN SUPPORT OF COUNT II(b)     PAGE 10 OF 10
503357\290\1726875

Case 3:24-cv-00051-SLG    Document 81    Filed 09/13/24    Page 11 of 11